**M.J.S., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF HEALTH AND SOCIAL SERVICES, Division of Family and Youth Services, Appellee.**

No. S–10212.

Supreme Court of Alaska.

Jan. 25, 2002.

Kenneth C. Kirk, Kenneth Kirk & Associates, Anchorage, for Appellant.

Lance B. Nelson, Assistant Attorney General, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, and James H. Parker, Assistant Public Advocate, and Brant McGee, Public Advocate, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

BRYNER, Justice.

## I. INTRODUCTION

The superior court terminated Marissa

Spencer's[1] parental rights to her daughter, Janet, concluding that Spencer suffered from a chronic substance abuse problem, that she had failed to remedy this conduct, and that her continued substance abuse exposed Janet to a substantial risk of harm. Spencer appeals, arguing that her substance abuse did not expose Janet to harm because Spencer placed her daughter in the custody of a responsible adult during periods when Spencer relapsed into substance abuse. Because the superior court did not clearly err in finding that Janet was a child in need of aid ("CINA") and was at substantial risk of harm, we affirm.

## II. FACTS AND PROCEEDINGS

Spencer, a mother of four children, has a criminal history and an extensive history with the Department of Health and Social Services, Division of Family and Youth Services ("state") as a result of her substance abuse. Her parental rights to all four of her children either have been voluntarily relinquished or terminated by court order. Spencer here contests the termination of parental rights to Janet, her third child.

Janet was born in May 1994; the department immediately placed her in its custody because Spencer was incarcerated. Spencer and Janet were reunited after Spencer completed drug treatment, but the state took custody of Janet again after nearly four years when Spencer gave birth to a fourth child, who tested positive for cocaine. The state filed a petition to adjudicate Janet as a

child in need of aid, and Spencer stipulated to the adjudication.

In December 1999 Spencer started a treatment plan designed by the department to reunite her with her two youngest children. Spencer quit her treatment program in June 2000 and thereafter declined to participate in other substance abuse treatment. After Spencer left treatment, the state petitioned to terminate her parental rights to Janet.

Before the department most recently took Janet into custody, she had been living with Martin Schultz, a man who had befriended Spencer. Spencer had named Schultz to be Janet's godfather and left Janet in his custody during periods of relapse when Spencer was unable to care for her. When Janet was staying with Schultz, Spencer and other relatives would regularly visit her. Spencer signed two consent forms authorizing Schultz to be Janet's guardian—one in November 1997 and one in September 1999; she also gave Schultz a power of attorney for Janet. But Schultz was never formally appointed as Janet's guardian.

After the state took custody of Janet and decided to place her in an adoptive home, Schultz moved to intervene in the CINA proceeding, seeking to retain custody of her. The superior court denied his motion to intervene, but provided for continued visitation. We affirmed that decision.[2]

The superior court subsequently held a hearing on the state's petition to terminate Spencer's parental rights. At the conclusion of the hearing, the court entered a termination order under AS 47.10.088,[3] finding

1. To protect the anonymity of the parties, we use pseudonyms throughout this opinion.

2. *"Schultz" v. State, Dep't of Health & Soc. Servs.*, Mem. Op. & J. No. 1008, at 4–5 (Alaska, December 13, 2000).

3. AS 47.10.088 provides in relevant part:

(a) Except as provided in AS 47.10.080(*o*), the rights and responsibilities of the parent regarding the child may be terminated for purposes of freeing a child for adoption or other permanent placement if the court finds
(1) by clear and convincing evidence that
(A) the child has been subjected to conduct or conditions described in AS 47.10.011; and
(B) the parent

(i) has not remedied the conduct or conditions in the home that place the child at substantial risk of harm; or
(ii) has failed, within a reasonable time, to remedy the conduct or conditions in the home that place the child in substantial risk so that returning the child to the parent would place the child at substantial risk of physical or mental injury; and
(2) by preponderance of the evidence that the department has complied with the provisions of AS 47.10.086 concerning reasonable efforts.
(b) In making a determination under (a)(1)(B) of this section, the court may consider any fact relating to the best interests of the child, including
(1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;

that the state had proved by clear and convincing evidence that Janet was a child in need of aid under several alternative statutory theories, particularly AS 47.10.011(1) and (10).[4] The court also found that Spencer had failed to remedy the situation that placed Janet in danger, despite the state's reasonable efforts to reunite Spencer with her children. Furthermore, the court concluded that terminating Spencer's parental rights would serve Janet's best interests. Spencer appeals.

## III. DISCUSSION[5]

■ The trial court based its order terminating Spencer's parental rights in part on its finding that Spencer had abandoned Janet under AS 47.10.013(a)(4). That provision allows a finding of abandonment "when the parent or guardian, without justifiable cause . . . failed to participate in a suitable plan or program designed to reunite the parent or guardian with the child." In reaching this decision the court ruled that Schultz did not meet the statutory definition of a guardian: "[a] natural person who is legally appointed guardian of the child by the court."[6] The court went on to find that Spencer suffered from a longstanding problem of substance abuse and had failed to address this condition despite the department's reasonable efforts

to assist her. While recognizing that a person attempting to address a chronic substance abuse problem can be expected to experience occasional difficulties and relapses, the court stressed that Spencer had completely ceased treatment, continued to abuse drugs, and showed no desire or ability to complete the department's plan to reunite her with her children. Spencer does not dispute these factual findings.

Spencer nevertheless argues that her rights should not have been terminated because she had implemented a plan to make Schultz Janet's legal guardian, thereby precluding the court from finding that she had abandoned Janet under AS 47.10.013(a)(4), which required proof that she failed to follow a plan to reunite the child with a "parent or guardian."[7]

■ But in our view the superior court properly applied the statutory definition of "guardian" in this case, correctly recognizing that it precluded Schultz from being considered a guardian because he had not been "legally appointed [as] guardian of the child by the court."[8] Indeed, our earlier decision affirming the superior court's order denying Schultz's motion to intervene implicitly recognized that he was not a guardian.[9] Although AS 47.10.990(12) does allow the statu-

---

(2) the amount of effort by the parent to remedy the conduct or the conditions in the home;
(3) the harm caused to the child;
(4) the likelihood that the harmful conduct will continue; and
(5) the history of conduct by or conditions created by the parent.
(c) In a proceeding under this chapter involving termination of the parental right of a parent, the court shall consider the best interests of the child.

4. AS 47.10.011 provides in pertinent part:
Subject to AS 47.10.019, the court may find a child to be a child in need of aid if it finds by a preponderance of the evidence that the child has been subjected to any of the following:
(1) a parent or guardian has abandoned the child as described in AS 47.10.013, and the other parent is absent . . . ;
. . . .
(10) the parent, guardian, or custodian's ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child; . . . .

5. When reviewing a superior court's termination of parental rights, we apply the clearly erroneous standard to the superior court's factual findings. *T.F. v. State, Dep't of Health & Soc. Servs.*, 26 P.3d 1089, 1092 (Alaska 2001). We use our independent judgment to decide questions of law, such as determining whether these factual findings satisfy applicable CINA provisions. *Id.*; see also *M.W. v. State, Dep't of Health & Soc. Servs.*, 20 P.3d 1141, 1143 (Alaska 2001). We also use our independent judgment when interpreting statutes. *F.T. v. State*, 862 P.2d 857, 861 n. 4 (Alaska 1993).

6. AS 47.10.990(12). "In this chapter, unless the context otherwise requires, . . . 'guardian' means a natural person who is legally appointed guardian of the child by the court."

7. *See* AS 47.10.013(a)(4) (emphasis added).

8. *See* AS 47.10.990(12).

9. *"Schultz" v. State, Dep't of Health & Soc. Servs.*, Mem. Op. & J. No. 1008, at 4–5 (Alaska, December 13, 2000).

tory definition of guardian to be broadened when "context otherwise requires," [10] we see nothing in the context of the abandonment statute that requires another definition, and Spencer fails to advance any other contextual reason to adopt one. Thus, the superior court properly ruled that Spencer had abandoned Janet by failing to complete the state's plan for reunification.

Spencer also challenges the superior court's finding that her chronic substance abuse placed Janet at substantial risk of harm. Spencer contends that her continued substance abuse did not expose Janet to any danger because Spencer had arranged for Schultz to care for Janet when Spencer relapsed into substance abuse.[11] But the superior court's findings are not clearly erroneous.

The court properly found that, despite Schultz's competent caregiving, Spencer's conduct continued to expose Janet to a substantial risk of harm because Spencer's substance abuse prevented Janet from forming a stable child/parent bond. As the superior court explained, the problem of Janet's need for stability could not be solved simply by having Schultz available to care for the child. Spencer was the cause of the instability: she would make herself available as a parent only occasionally, drifting in and out of Janet's life when it suited her (Spencer's) needs, and refusing to change her lifestyle in a way that would allow Janet to form a stable and healthy relationship. Spencer had been out of treatment and continuously abusing sub-

stances for over eight months. As the trial court specifically noted, her conduct was "wholly inadequate as far as the needs of" Janet.

The findings are not clearly erroneous. Thus, the record supports the trial court's ruling under AS 47.10.011(10) that Janet was at substantial risk of harm because of Spencer's substance abuse.[12] And our review of the record convinces us that the trial court did not abuse its discretion in concluding that termination was in Janet's best interests.

## IV. CONCLUSION

We AFFIRM the termination order.

---

10. *See* note 6, *supra.*

11. Spencer criticizes the superior court for focusing on her failure to address her substance abuse problems, rather than focusing on the risk of harm to Janet. Spencer points out that the superior court's written findings do not expressly state that Spencer's substance abuse continued to place Janet at risk of substantial harm. But a review of the superior court's more complete oral findings establishes that the court fully considered the risk of harm to Janet and expressly found that Spencer's substance abuse continued to place Janet in danger of suffering substantial emotional harm.

12. Our decision affirming the superior court on this ground makes it unnecessary to address the court's findings of alternative grounds for termination. We also need not address Spencer's constitutional claim, which depends on the incorrect factual assumption that the risk of harm

to Janet would have been avoided by placing her in Schultz's care, while allowing Spencer to continue her existing maternal relationship. Spencer's argument assumes that the risk of Janet suffering physical danger was the primary focus that led the superior court to terminate. But, as indicated by our discussion in the text, the superior court terminated Spencer's parental rights on the basis of the continuing *emotional* risk to Janet; the court found that Janet desperately needed to form a bond with a stable and dependable parent and that she was suffering devastating emotional harm from her continuing exposure to her mother—who drifted in and out of Janet's life whenever she pleased. Continuing court-exerted control over Spencer would not have protected Janet from this risk of emotional harm; rather it would have simply perpetuated the existing harm.