HAGELAND AVIATION SERVICES,
INC., L. Michael Hageland, and
James Tweto, Appellants,

v.

John HARMS and Other Pilots Similarly
Situated, Appellees.

Nos. S–12871, S–12881.

Supreme Court of Alaska.

June 5, 2009.

Rehearing Denied July 15, 2009.

Thomas M. Daniel, James N. Leik, and Jacob Nist, Perkins Coie LLP, Anchorage, for Appellant Hageland Aviation Services, Inc.

Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellants L. Michael Hageland and James Tweto.

Timothy J. Petumenos, Max D. Garner, and Peter C. Nosek, Birch, Horton, Bittner & Cherot, Anchorage, for Appellees.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

## OPINION

FABE, Chief Justice.

## I. INTRODUCTION

Pilots of Hageland Aviation Services, Inc. filed a class action lawsuit in 2002 for unpaid overtime wages under the Alaska Wage and Hour Act. After the Alaska Legislature amended the Act in 2003 to exempt pilots from the Act's overtime compensation provision, Hageland moved to dismiss the lawsuit. The superior court held that the legislative change exempting pilots from the Act applied only from the amendment's effective date of July 16, 2003. The legislature again amended the Act in 2005 to make its 2003 amendment to the Act retroactive to 2000. Hageland moved for summary judgment based on the retroactive exemption, and the pilots cross-moved for summary judgment, arguing that the retroactive exemption violates numerous provisions of the state and federal constitutions. The superior court concluded that the 2005 amendment violates the takings and contract clauses of the Alaska Constitu-

tion. Hageland appeals. Because we agree with the superior court that the 2005 amendment is a violation of the takings and contract clauses, we affirm.

## II. FACTS AND PROCEEDINGS

Hageland Aviation Services, Inc. is a regional air carrier that provides commercial passenger service and hauls mail to more than seventy villages. John Harms, a former pilot of Hageland, filed a class action suit against Hageland on June 26, 2002, seeking unpaid overtime wages under the Alaska Wage and Hour Act[1] for himself and other similarly situated employees.

A few months before the class was certified, the superior court granted Harms's motion for summary judgment on Hageland's liability for Harms's unpaid overtime. Superior Court Judge Peter A. Michalski concluded that Harms was entitled to overtime wages as a matter of law because he earned less than $300.00 per day, which made him a per se nonexempt employee under the regulations promulgated by the Alaska Department of Labor and Workforce Development for the Act's overtime compensation provision.[2]

The class was certified in August 2003. As of May 2007 the class consisted of twenty-three then-current and former pilots of Hageland who were paid a daily rate between June 26, 2000, and July 16, 2003. The basic term of the pilots' employment agreement, which was not in writing, was that they would receive a daily rate for each day they were on duty. The pilots were on duty for fourteen hours per day and their daily rates varied from $66.67 to $350.00. Like other regional air carriers, Hageland never paid overtime wages to its pilots, and none of the pilots testified that they believed that they were entitled to overtime wages while they were working for Hageland.

In 2003 the Alaska Legislature expressly exempted pilots from the Act's overtime compensation provision by passing Chapter 11 of SLA 2003, which is codified as AS

---

1. AS 23.10.050–.150.

2. AS 23.10.060; 8 Alaska Administrative Code (AAC) 15.908(c) (2004).

23.10.060(d)(19). In October 2003 the superior court held that the statutory exemption applied only from the amendment's effective date of July 16, 2003, which left intact the pilots' claims between June 26, 2000, and July 16, 2003. In the superior court's order, it noted that Chapter 11 "simply changes Alaska law, without directly overturning court or executive decisions."

In a second summary judgment order on liability, the superior court held in January 2004 that the pilots were per se nonexempt employees and thus entitled to overtime wages. The superior court reasoned that Hageland's practice of reducing the pilots' pay for partial-day absences violated the Alaska labor department's regulations, which require that exempt employees' salaries not be subject to reduction because of variations in the quantity of work performed.[3]

In 2005 the legislature passed another amendment to the Act's overtime compensation provision. Chapter 19 of SLA 2005 made the 2003 amendment's statutory exemption of pilots retroactive to January 1, 2000, and explicitly stated that it applied to all actions and proceedings under the Act's overtime compensation provision that were not determined by a final judgment before its effective date of May 18, 2005. The sponsor statement for Chapter 19's senate bill explained that Chapter 19 "clarifies legislative intent by retroactively removing flight crews from the scope of statutory overtime compensation required under the Alaska Wage and Hour Act found in AS 23.20.060." The sponsor statement also recognized that three class action suits had been filed and that they would be covered by the retroactive provision. According to the sponsor statement, Chapter 11 was enacted to "codif[y] what . . . had been [Department of Labor] policy exempting flight crews from the [Act's] overtime compensation rules." The statement also highlighted the burdens placed on the "critical yet fragile" air carrier industry threatened by "superfluous litigation."

In December 2005 the superior court considered the parties' cross-motions for summary judgment on the constitutionality of Chapter 19. The superior court granted the pilots' cross-motion for partial summary judgment and denied Hageland's motion for summary judgment, ruling that Chapter 19 violates the Alaska Constitution's takings and contract clauses.[4] The superior court reasoned that the pilots' property rights in their claims for unpaid overtime pay vested at the end of each pay period for which overtime wages would have been due. The superior court further determined that the pilots had a reasonable expectation to receive the overtime compensation before Chapter 11 was enacted and Chapter 19 caused a direct financial loss to the pilots. The superior court also held that because Chapter 19's purpose was to eliminate the pilots' claims, it violated the contract clause by substantially impairing the overtime compensation term of the parties' employment agreement. The superior court reasoned that this impairment served a "questionable" purpose and was "manifestly unfair."

After holding Chapter 19 unconstitutional, the only unresolved issue before the superior court was the amount of unpaid overtime wages owed to the pilots. In August 2007 the parties stipulated to $1,600,000 in damages and final judgment was entered. Hageland appeals the superior court's summary judgment order holding that Chapter 19 violates the takings and contract clauses of the Alaska Constitution.

## III. STANDARD OF REVIEW

We review a grant of summary judgment de novo[5] and will affirm "if the evidence in the record fails to disclose a genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[6] We draw all reasonable inferences of

---

3. 8 AAC 15.908(a), .908(c), .910(a)(22).

4. The superior court rejected the pilots' arguments that Chapter 19 violates the substantive due process, equal protection, special legislation, and ex post facto provisions of the state and federal constitutions.

5. *Simpson v. Murkowski*, 129 P.3d 435, 440 (Alaska 2006).

6. *Ware v. Ware*, 161 P.3d 1188, 1192 (Alaska 2007) (internal quotation marks omitted).

fact in favor of the nonmoving party.[7] Applying our independent judgment to decide constitutional issues, we "will adopt a reasonable and practical interpretation in accordance with common sense based upon the plain meaning and purpose of the provision and the intent of the framers." [8] In matters of statutory interpretation, we also apply our independent judgment.[9]

## IV.  DISCUSSION

Hageland appeals the superior court's ruling that Chapter 19 is unconstitutional. Chapter 19 provides in full:

### AN ACT

Relating to the retrospective application and applicability of the overtime compensation exemption for flight crew members; and providing for an effective date.

———————

\* **Section 1.** The uncodified law of the State of Alaska is amended by adding a new section to read:

OVERTIME COMPENSATION EXEMPTION FOR FLIGHT CREW WORK PERFORMED AFTER JANUARY 1, 2000.   The   provisions   of   AS 23.10.060(d)(19), as enacted by sec. 1, ch. 11, SLA 2003, apply to work performed on or after January 1, 2000.

\* **Sec. 2.** The uncodified law of the State of Alaska is amended by adding a new section to read:

RETROSPECTIVE   APPLICATION. This Act applies retrospectively to all actions   and   proceedings   under   AS 23.10.060(b) that are based on a claim for overtime compensation for employment as a flight crew member on or after January 1, 2000, and that are not determined by final court judgment or administrative decision on or before the effective date of this Act. For purposes of this section, "flight crew member" means a person performing work under AS 23.10.060(d)(19), as enacted by sec. 1, ch. 11, SLA 2003.

\* **Sec. 3.** This Act takes effect immediately under AS 01.10.070(c).[10]

Thus, Chapter 19 made Chapter 11's amendment to the Act retroactive to January 1, 2000.   Chapter 11 added subsection (d)(19) to AS 23.10.060, the Act's overtime compensation   provision.[11]   Subsection (d)(19) exempts "work performed by a flight crew member employed by an air carrier subject to 45 U.S.C. 181–188 (subchapter II of the Railway Labor Act)" from application of the overtime compensation provision. According to this subsection, " 'flight crew' means the pilot, co-pilot, flight engineer, and flight attendants."

■  Before us in this appeal are the questions whether Chapter 19's retroactive application [12] of the statutory exemption of flight

---

7.  *Id.*

8.  *Simpson,* 129 P.3d at 440 (internal quotation marks omitted).

9.  *Regulatory Comm'n of Alaska v. Tesoro Alaska Co.,* 178 P.3d 1159, 1163 (Alaska 2008).

10.  Ch. 19, SLA 2005.

11.  Ch. 11, § 1, SLA 2003.

12.  Hageland argues that Chapter 19's retroactive application of Chapter 11 is constitutional because the legislature's intent in passing both chapters was to clarify existing law.  But we do not afford the legislature's opinion great weight in interpreting the meaning of its previously enacted statutes.  *See Hillman v. Nationwide Mut. Fire Ins. Co.,* 758 P.2d 1248, 1252 (Alaska 1988) (noting that "the inquiry as to whether a legislature which has amended a statute intends to change or merely clarify the statute is usually fruitless" because the legislature's opinion as to the meaning of a statute passed by an earlier legislature is no more persuasive than that of a knowledgeable commentator).  In this case, we decline to treat Chapters 11 and 19 as clarifying legislation.  Despite legislative comments to the contrary, the Act's pre-amendment language, its history, and its application to pilots by the Alaska labor department support the superior court's conclusion that the enactments changed existing law.  *See, e.g.,* AS 23.10.060(d) (2002) (listing eighteen exemptions to application of the Act's overtime compensation provision), *amended by* ch. 11, § 1, SLA 2003; ch. 90, § 3, SLA 2005; ch. 45, § 1, SLA 1972 (repealing the Act's original exemption from application of its overtime compensation provision for all "persons subject to the United States Railway Labor Act," including employees of air carriers that were engaged in interstate or foreign commerce or transporting mail for the United States).

crews from the Act's overtime compensation provision violates the takings or contract clauses of the Alaska Constitution.

## A. Chapter 19 Is an Unconstitutional Taking.

■ Article I, section 18 of the Alaska Constitution provides: "Private property shall not be taken or damaged for public use without just compensation." In analyzing whether a taking has occurred in this case, we address two questions.[13] First, are the pilots' claims for unpaid compensation property interests protected by the takings clause?[14] Second, if the claims are protected property interests, does Chapter 19 effect a taking of that property?[15] The superior court answered both of these questions in the affirmative, reasoning that each pilot had a protected property interest in the wages owed by law at the end of each pay period and that under our multifactor test for takings violations an unconstitutional taking had occurred. We agree.[16]

### 1. The pilots have vested property interests that are protected by the Alaska Constitution's takings clause.

■ We have recognized that "a cause of action for unpaid overtime accrues at the end of each pay period in which overtime is due."[17] Applying this rule to the present case, the pilots' claims had already accrued when Chapter 19 was passed in 2005 because their claims were for unpaid overtime compensation for work performed between June 26, 2000, and July 16, 2003.

■ Although Hageland argues that the claims for unpaid overtime are not protected by the Alaska Constitution's takings clause before a final judgment has been entered, we have held "that a chose in action ... is a form of property" that the claimant cannot be deprived of litigating without due process of law.[18] Unlitigated causes of action become property when they accrue.[19] In *Bidwell v. Scheele*, we noted that "vested" and "accrued" are often used "interchangeably" because " 'accruing' has been defined as that which will or may, at a future time, ripen into a vested right."[20] Thus, a cause of action becomes a vested property interest that is protected by the takings clause as soon as it accrues and so has that status even before the issuance of a final judgment. Here, the pilots' property interests in their claims for unpaid overtime are protected by our constitution at the time their claims accrued; their claims need not have been reduced to final judgment to create vested property interests that are protected by the takings clause.

### 2. Chapter 19 takes the pilots' vested property interests in violation of the Alaska Constitution's takings clause.

■ We consider three factors to determine whether a government action effects a taking: (1) the character of the government

---

**13.** As in *State, Department of Natural Resources v. Arctic Slope Regional Corp.*, the questions of whether the taking is for a public use and whether the statute provides adequate compensation are not at issue in this case. *See* 834 P.2d 134, 138 & n. 3 (Alaska 1991) (adopting the analysis used by the United States Supreme Court in *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1000–01, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), to determine whether a violation of the federal Takings Clause had occurred).

**14.** *See id.* at 138.

**15.** *See id.*

**16.** As a threshold matter, Hageland argues that the superior court should have dismissed the pilots' takings claims so they could pursue compensation for the alleged taking because a party

who alleges a takings violation must show that the government denied compensation for the alleged taking. However, we have not imposed such a requirement on takings claimants, and we decline do so here. *See Reust v. Alaska Petroleum Contractors, Inc.*, 127 P.3d 807, 823 (Alaska 2005) (performing a takings analysis without reference to whether the government denied compensation).

**17.** *Quinn v. Alaska State Employees Ass'n/Am. Fed'n of State, County & Mun. Employees, Local 52*, 944 P.2d 468, 470 n. 3 (Alaska 1997).

**18.** *Bush v. Reid*, 516 P.2d 1215, 1219–21 (Alaska 1973).

**19.** *Reust*, 127 P.3d at 823.

**20.** 355 P.2d 584, 586 n. 5 (Alaska 1960).

action, which includes consideration of the legitimacy of the interest advanced by the action; [21] (2) its economic impact; and (3) its interference with reasonable investment-backed expectations.[22]

■ Turning first to the character of the government action, Hageland argues that the legislature was exercising its police power by regulating employee wages when it passed Chapter 19 and that it did so for the common good, without "tak[ing] anything for its own use." Hageland's argument fails for two reasons. First, Hageland explores the character of the legislative decision to exempt pilots from the Act's overtime compensation provision rather than the government action at issue: the retroactivity provided in Chapter 19. When the legislature passed Chapter 11, it shifted future economic burdens once borne by air carriers to their flight crews. While this enactment may have been a legitimate exercise of the legislature's police power to regulate employment and wages,[23] the broad purpose of Chapter 11's exclusion stands in stark contrast to the narrow purpose of Chapter 19's retroactivity. The avowed purpose of Chapter 19 was to eliminate the pilots' claims along with the claims of two other class actions against Alaska air carriers. The legislature enacted Chapter 19 to extinguish retroactively all claims for unpaid overtime compensation for "work performed on or after January 1, 2000"[24] because, as the sponsor statement for Chapter 19's senate bill explained, Chapter 11 "failed

to fully enact the legislative intent necessary to deflect court actions seeking recovery for periods dating back to the year 2000." In carrying out the legislature's narrow purpose to prevent litigation of these class actions, Chapter 19 effectively transferred money from the pockets of one private party to another.

■ Second, despite Hageland's focus on the fact that the State did not take the pilots' claims for its own use when it enacted Chapter 19, whether the State receives a benefit from the alleged taking is irrelevant to the takings analysis.[25] We have recognized that "[t]he finding of a taking, finally, depends on whether someone has been deprived of the economic benefits of ownership, not whether the State captures any of those benefits."[26]

Chapter 19's significant economic impact on the pilots is obvious. Although Hageland acknowledges that Chapter 19 eliminated the pilots' claims to unpaid overtime, it maintains that their claims were "inchoate," "speculative," and "uncertain." But the pilots' recovery was certain when Chapter 19 was enacted. Hageland had already been found liable for the pilots' unpaid overtime and the only unresolved issue before the superior court was the exact value of the judgment against Hageland, which was later stipulated by the parties to be $1,600,000—by no means a small sum of money. And even if there had not been a summary judgment ruling in favor

**21.** In some of our prior applications of this analysis, we have identified the legitimacy of the interest advanced by the government action as a fourth factor separate from the first factor. *E.g., Spinell Homes, Inc. v. Municipality of Anchorage,* 78 P.3d 692, 702 (Alaska 2003); *R & Y, Inc. v. Municipality of Anchorage,* 34 P.3d 289, 293 (Alaska 2001). Although *Palazzolo v. Rhode Island,* 533 U.S. 606, 633–34, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), hinted at four factors, including the legitimacy of the public purpose as a separate factor, the United States Supreme Court has since made it clear that there are only three factors and that this is not a separate fourth factor. *See Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 538–39, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005) (listing three factors); *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 315 n. 10, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (same). Accordingly, we do not treat the legitimacy of the interest advanced by the government action as a separate factor and instead examine the legitimacy of the interest when applying the first factor.

**22.** *E.g., Holding v. Municipality of Anchorage,* 63 P.3d 248, 251 n. 14 (Alaska 2003); *State, Dep't of Natural Res. v. Arctic Slope Reg'l Corp.,* 834 P.2d 134, 139 (Alaska 1991) (quoting *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984)).

**23.** *See Dayhoff v. Temsco Helicopters, Inc.,* 848 P.2d 1367, 1369 (Alaska 1993) ("Employment laws, including wage laws, are a local concern traditionally within states' police powers.").

**24.** Ch. 19, § 2, SLA 2005.

**25.** *See Waiste v. State,* 10 P.3d 1141, 1154 (Alaska 2000).

**26.** *Id.*

of the pilots, they would still have suffered a substantial economic loss. They had already worked the overtime hours, and by law they were entitled to receive compensation for those hours of work at the end of each pay period.

■ With regard to the final factor, Hageland contends that the pilots did not have a reasonable investment-backed expectation of being paid overtime compensation because they did not have an actual expectation of being paid more than they had already received. But the test for reasonable expectations is an objective one,[27] and the pilots reasonably expected that they would be paid according to the law for the work they had performed for Hageland. Regardless of whether the pilots knew the specifics of the law and whether it required payment of overtime wages under particular circumstances, they could reasonably expect that Hageland would comply with the existing wage and hour laws. Thus, the pilots had a reasonable investment-backed expectation protected by the takings clause and it was interfered with when Chapter 19 retroactively eliminated their claims for unpaid overtime.[28]

## B. Chapter 19 Is an Unconstitutional Impairment of Contracts.

■ Article I, section 15 of the Alaska Constitution provides: "No law impairing the obligation of contracts ... shall be passed." Because the language of the contract clause of the Alaska Constitution is nearly identical to that of the federal Contract Clause,[29] we apply the same two-part analysis to alleged violations of the Alaska and federal contract clauses.[30] We first ask "whether the change in state law has operated as a substantial impairment of a contractual relationship."[31] If there is a substantial impairment, we then examine "whether the impairment is reasonable and necessary to serve an important public purpose."[32] The superior court determined that Chapter 19 substantially impaired the overtime compensation term of the parties' employment agreement. The superior court also determined that this impairment was not justified by a legitimate public purpose because "the legitimacy of targeting specific, ongoing lawsuits is questionable," and even if Chapter 19's public purpose was legitimate, it would not justify "[t]he retroactive removal of existing contract rights from

27. Although we have not directly addressed whether the test for this factor is wholly objective, in our prior decisions we have largely devoted our discussion of this factor to the reasonableness of the investment-backed expectations, an objective inquiry. *See, e.g., Anchorage v. Sandberg*, 861 P.2d 554, 559 (Alaska 1993) ("The real question presented by this case is whether SD & R's expectations concerning its development plans were reasonable and whether those expectations should be afforded constitutional protection."). Accordingly, we agree with the Federal Circuit's determination that "[w]hile this analysis is essentially an *ad hoc*, factual inquiry, it is nonetheless an *objective* one. The subjective expectations of the [claimants] are irrelevant." *Chancellor Manor v. United States*, 331 F.3d 891, 904 (Fed.Cir.2003) (citations omitted).

28. In addition to arguing that the superior court correctly determined that a takings violation occurred under our ad hoc analysis for takings violations, the pilots ask us to entertain whether a per se taking of an intangible right occurred. We do not need to address this alternative ground for affirming the superior court's ruling because we agree with the superior court that Chapter 19 effected an unconstitutional taking under our multifactor approach. *See M.J.S. v. State, Dep't of Health & Soc. Servs., Div. of Fami-*

*ly & Youth Servs.*, 39 P.3d 1123, 1126 n. 12 (Alaska 2002) ("Our decision affirming the superior court on this ground makes it unnecessary to address the court's findings of alternative grounds....").

29. Article I, section 10 of the United States Constitution provides: "No State shall ... pass any ... Law impairing the Obligation of Contracts...."

30. *See Stepanov v. Homer Elec. Ass'n, Inc.*, 814 P.2d 731, 736 (Alaska 1991) (rejecting the claim that a state commission's effective revision of the claimants' contracts violated the Alaska and federal contract clauses); *Wien Air Alaska v. Arant*, 592 P.2d 352, 363 (Alaska 1979) (dismissing the argument that the maximum rate table of a workers' compensation law impairs obligations under the claimant's insurance contract in violation of the Alaska and federal contract clauses), *overruled on other grounds by Fairbanks N. Star Borough Sch. Dist. v. Crider*, 736 P.2d 770 (Alaska 1987).

31. *Simpson v. Murkowski*, 129 P.3d 435, 444 (Alaska 2006) (internal quotation marks omitted).

32. *Id.*(internal quotation marks omitted).

one party in favor of another who clearly violated existing law."

### 1. Chapter 19 substantially impairs the parties' contractual relationship.

██ Under the first prong of the contract clause test, we consider: (1) whether there is a contractual relationship, (2) whether the law impairs the contractual relationship, and (3) whether the impairment is substantial.[33] The parties do not deny there was a contractual relationship between Hageland and the pilots. It is also undisputed that under the parties' unwritten agreement the pilots would receive a daily rate for each day they were on duty.

As to whether Chapter 19 impairs the parties' contractual relationship, Hageland argues that the term of the contract alleged to be infringed—the payment of overtime compensation under AS 23.10.060—was not a part of the contract between Hageland and the pilots because the parties' contractual expectations did not include payment for overtime wages. Alaska Statute 23.10.060(c), however, expressly states that the Act's overtime compensation provision is "included in all contracts of employment."

By eliminating the pilots' claims to unpaid overtime, Chapter 19 substantially, and in fact completely, impaired Hageland's contractual obligation to pay overtime compensation as required by statute. Hageland disagrees with this conclusion, arguing that even if Chapter 19 impairs the parties' employment agreement, the impairment could not be substantial because the parties did not actually rely on the overtime compensation term of their agreement. Hageland relies on *City of Charleston v. Public Service Commission of West Virginia*, in which the Fourth Circuit recognized that the United States Supreme Court's "greatest concern appears to be the contracting parties' actual reliance

on the abridged contractual term." [34] But the question whether the pilots expected to be paid more than they received from Hageland is separate from the question whether they actually relied on the overtime compensation provision because, as the Fourth Circuit noted, the requisite reliance is assessed from an objective viewpoint.[35] And as noted above, the pilots had a reasonable belief that they would be compensated in accordance with the law.

██ Moreover, in *City of Charleston*, the Fourth Circuit examined the United States Supreme Court's considerations in assessing objective evidence of reliance.[36] Of particular significance to the present case is the Supreme Court's consideration of how the challenged statute changed the parties' contractual relationship. In *United States Trust Co. v. New Jersey*, the Court held that a New Jersey statutory amendment impaired a constitutionally protected contract right because it "totally eliminated" an "important" statutory covenant that limited the Port Authority's ability to use revenues and reserves to subsidize rail passenger transportation.[37] Similarly, Chapter 19 "totally eliminated" the pilots' important contractual right to overtime wages for work performed between June 26, 2000, and July 16, 2003.[38] We agree with the Fourth Circuit that compensation for work performed according the parties' employment agreement is of great importance:

> In the employment context, there likely is no right both more central to the contract's inducement and on the existence of which the parties more especially rely, than the right to compensation at the contractually specified level. Accordingly, we believe that the salary reductions at issue constituted a substantial impairment of the

---

**33.** *Id.*

**34.** 57 F.3d 385, 392 (4th Cir.1995).

**35.** *See id.*("When assessing whether there has been the requisite reliance, the Court has looked to objective evidence of reliance.").

**36.** *Id.* at 392–94.

**37.** 431 U.S. 1, 19, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977).

**38.** *See* Ch. 19, SLA 2005 (applying the statutory exemption of flight crews to the Act's overtime compensation provision to claims for unpaid wages for overtime worked on or after January 1, 2000).

employees' contract.... [39]

Hageland also argues that when the legislature abridges a right that it provided through an earlier act, the impairment is not substantial. But the Supreme Court's decision in *United States Trust Co.* demonstrates that a legislature's impairment of a statutory right created through a prior enactment may be substantial.[40]

For these reasons, Hageland's arguments are unavailing. Chapter 19 substantially impaired the overtime compensation provision of the parties' employment agreement when Chapter 19 "totally eliminated" the pilots' claims for unpaid overtime wages against Hageland.

### 2. Chapter 19's impairment of Hageland's obligation to pay the pilots overtime compensation for work already performed is not reasonable and necessary to serve an important public purpose.

Under the second prong of our contract clause analysis, we scrutinize whether Chapter 19 is reasonable and necessary to serve an important public purpose.[41] "The severity of the impairment measures the height of the hurdle the state legislation must clear.... Severe impairment ... will push the inquiry to a careful examination of the nature and purpose of the state legislation."[42] Here, Chapter 19's impairment of the pilots' contractual right to overtime compensation was severe in that it completely eliminated Hageland's obligation to pay the pilots the overtime wages that they were entitled to under the superior court's summary judgment orders on liability.

According to Hageland, the sponsor statement for Chapter 19's senate bill demonstrates the legislature's belief that Chapter 19 would serve the important public purpose of aiding the vulnerable air carrier industry in Alaska. The sponsor statement highlighted the burdens placed on the "critical yet fragile" air carrier industry threatened by "superfluous litigation."

We do not question that Chapter 11 serves an important public purpose by reallocating the financial burdens borne by air carriers and their employees in order to aid a struggling transportation industry that many Alaskans, especially those living in rural areas off the road system, depend upon to sustain their way of life. Yet it is difficult to discern how Chapter 19 serves this important public purpose by denying pilots employed by three air carriers the overtime they were entitled to under the existing law when they performed the work. Hageland cites the possibility that the pilots' suit, and others like it, would put Hageland and other air carriers out of business. But Chapter 19 only addresses the overtime wages of pilots employed by three of Alaska's more than sixty-five air carriers. As the superior court remarked, "[t]he retroactive removal of existing contract rights from one party in favor of another who clearly violated existing law is manifestly unfair."[43] Thus, Chapter 19 is not reasonable and necessary to serve the

**39.** *Balt. Teachers Union, Am. Fed'n of Teachers Local 340 v. Mayor of Balt.,* 6 F.3d 1012, 1018 (4th Cir.1993).

**40.** 431 U.S. at 19, 97 S.Ct. 1505 (holding that a New Jersey statutory amendment that eliminated a statutory covenant constituted an impairment substantial enough to trigger contract clause protections).

**41.** *See Simpson v. Murkowski,* 129 P.3d 435, 444 (Alaska 2006).

**42.** *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 245, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

**43.** Although a determination that Chapter 19 violates either the takings clause or the contract clause would be sufficient to uphold the superior court's order, we affirm the superior court's decision on both of its alternative grounds for concluding that Chapter 19 is unconstitutional. *See Meiners v. Bering Strait Sch. Dist.,* 687 P.2d 287, 298 & n. 12 (Alaska 1984) (affirming the superior court's ruling on two alternative grounds). We do not address the pilots' argument that the superior court's ruling should be upheld because Chapter 19 also violates the due process and equal protection clauses of the Alaska Constitution. *See M.J.S. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.,* 39 P.3d 1123, 1126 n. 12 (Alaska 2002) ("Our decision affirming the superior court on this ground makes it unnecessary to address the court's findings of alternative grounds....").

important public purpose advanced by Hageland.

## V. CONCLUSION

Because Chapter 19's retroactive application of the statutory exemption of flight crews to the Act's overtime compensation provision is an unconstitutional taking of the pilots' overtime wages and an unconstitutional impairment of the parties' employment agreement, we AFFIRM the superior court's holding that Chapter 19 violates the takings and contract clauses of the Alaska Constitution.

WINFREE, Justice, not participating.