In the Matter of the ADOPTION
OF XAVIER K., a Minor.

No. S–13838.

Supreme Court of Alaska.

Jan. 13, 2012.

Phil N. Nash, Law Offices of Phil N. Nash, Kenai, for Appellant.

No appearance by Appellee.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

CARPENETI, Chief Justice.

## I. INTRODUCTION

A mother petitioned the superior court to adopt her biological son. She has never been married to the child's father. While the court concluded that the father's consent was not needed, it denied the petition as not being in the child's best interests. Instead, the court granted physical and legal custody to the mother and visitation rights to the father. Because Alaska's adoption statute does not contemplate an adoption under the circumstances of this case, we affirm.

## II. FACTS AND PROCEEDINGS

Xavier K. was born in August 2005 to Roberta Katz and Frank Smith.[1] Katz and Smith have never been married. Smith has a felony history including burglary, theft, and

---

1. We use pseudonyms to protect the family's privacy.

assault. Shortly after learning that she was pregnant, Katz discovered that Smith had been unfaithful to her. She moved out of their shared apartment and was not living with Smith when Xavier was born. Smith learned of Xavier's birth from a third party and traveled to Anchorage to see his son in the hospital. After Katz and Xavier were released from the hospital, Smith sought out Katz while she and Xavier were on an outing in Nikiski. They discussed the expense of raising a child, and Smith claims that he gave Katz $400 in cash.

In September 2005, probation officers seized cocaine and marijuana from Smith's apartment, along with $4,210 in cash. Smith was indicted by a grand jury, convicted, and incarcerated from September 2005 to September 2007. Katz visited Smith at least twice while he was in prison but did not bring Xavier. While Smith was in prison, the Child Support Services Division (CSSD) set Smith's child support obligation at $50 per month. CSSD informed Smith that he must notify CSSD once he was released and employed. Smith did not make any child support payments to CSSD while he was in prison. He did, however, make several cash payments and medical cost reimbursements to Katz in 2007 and 2008.

Smith was released in September 2007 with five years' probation. He did not contact CSSD upon his release. Smith visited Xavier for the first time in October 2007 following his release. Between this visit and August 10, 2008, 18 visits occurred between Smith and Xavier, supervised by Katz and mostly taking place at McDonald's. Smith missed a number of additional scheduled visits.

By this point, Katz was involved with another man, Seth Colton. Katz later testified that in front of Xavier, "[Smith] was referred to as Father and [Colton] was referred to as ... Dad." During one of Smith's final visits with Xavier, the boy saw Colton in the parking lot and said something to the effect of "there's my daddy." This comment upset Smith. In August 2008, Katz asked Smith to rent a playroom at McDonald's for Xavier's birthday party. Smith declined, as he was still upset about Xavier's remark. Smith then declined an opportunity to meet with Katz and Xavier at the 2008 State Fair.

On August 18, 2008, Katz and Smith exchanged a long string of text messages. Smith expressed frustration that Katz allowed Xavier to call Colton "Daddy," while Katz expressed frustration that Smith would not sign a parenting agreement giving her sole legal and primary physical custody of Xavier. The parties then cut off communication with each other. Katz did not communicate her whereabouts to Smith, nor did she facilitate communication between Xavier and his father. In late summer or fall of 2008, Smith began living with a woman named Sarah Selwyn.

In November 2009, Katz petitioned to adopt Xavier. The petition alleged that Smith's consent was not needed because he had abandoned the child for at least six months, he had failed to "communicate meaningfully," and he had failed to provide child support payments. Smith contested the adoption. Hearings were conducted before Superior Court Judge Carl Bauman in Kenai in March 2010. By this time, Katz was engaged to Colton and Smith was engaged to Selwyn. Smith and Selwyn had recently had a child.

During the hearings, the court heard testimony on the parties' efforts to contact each other, the visits between Smith and Xavier, the amount of child support that Smith had paid to Katz, and Smith's difficulties finding employment since being released from prison. Some of the testimony addressed the limited involvement of Xavier's paternal grandparents in his life, with Katz testifying that Smith's mother had sent Xavier two cards in four years. The court found that Smith had made a total of $1,300 in child support payments—$400 in August 2005, and $100 per month from November 2007 through July 2008.

The court issued its findings of fact and conclusions of law on March 26, 2010. Alaska Statute 25.23.120(c) provides that a court may issue a final decree of adoption if it finds "that the required consents have been obtained or excused and that the adoption is in the best interest of the person to be

adopted." The court concluded that Smith's consent was not required, because Smith failed to communicate meaningfully with his son, and failed to provide for Xavier's care and support. But the court also decided that it was not in Xavier's best interests to grant the adoption petition. Instead, the court granted sole physical and legal custody to Katz and visitation rights to Smith.

Katz appeals.

## III. STANDARD OF REVIEW

■ We review de novo as a matter of law whether factual findings satisfy the requirements for application of a statute, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[2]

## IV. DISCUSSION

**Alaska's Adoption Statute Does Not Permit Adoption Under The Circumstances Of This Case.**

■ This case presents a situation unprecedented in this court—a parent petitioning to adopt the parent's own biological child when parental rights to the child have never been extinguished. But while Katz seeks to "adopt" Xavier, essentially she seeks to terminate Smith's parental rights without his consent. An adoption has the dual effects of (1) creating a parental relationship under the law between petitioner and adoptee, and (2) terminating the biological parents' parental rights.[3] Here, Katz already has parental rights, and so adoption would achieve only the second of these goals.

■ Katz's attempted use of the adoption statute is deeply problematic. Termination of parental rights is an extreme measure, and "parents should not be deprived of the fundamental rights and duties inherent in the parent-child relationship except for grave and weighty reasons."[4] Two means exist for involuntarily terminating parental rights in Alaska. The first is the Children in Need of Aid (CINA) statute, which lays out rigorous criteria for parental unfitness that the state must prove by clear and convincing evidence.[5] The second is through adoption, which may take place without the consent of the biological parent(s) under the conditions outlined in AS 25.23.050. However, adoption and CINA terminations differ in a fundamental respect: "An adoption proceeding operates to *replace* a parent, while a [CINA] proceeding operates to *emancipate* a child from an offending parent's legal bonds."[6] An adoption petition such as Katz's, which would terminate the non-consenting father's parental rights without replacing him with a legally obligated adult, contravenes the purpose of adoption.

Alaska's adoption statutes do permit an individual to adopt his or her biological child—AS 25.23.020(a), which lists the categories of individuals who may adopt, states in subsection (3) that "the unmarried father or mother of the person to be adopted" may adopt. But, as we conclude below, a biological parent adoption should not be granted under the circumstances of this case. Alaska's adoption statutes are based on the 1969 version of the Uniform Adoption Act,[7] which originally provided that "the unmarried father or mother of the individual to be adopted" may adopt.[8] In 1994, this provision of the Act was amended to state that "any individual may adopt or be adopted by another individual *for the purpose of creating the relationship of parent and child between them.*"[9] Under this measure, a biological parent who already has a legal parent-child

---

**2.** *In re Adoption of S.K.L.H.*, 204 P.3d 320, 324–25 (Alaska 2009).

**3.** AS 25.23.130(a)(1)-(2).

**4.** *In re K.M.M.'s Adoption*, 611 P.2d 84, 87 (Alaska 1980) (internal quotation marks omitted).

**5.** AS 47.10.088(a).

**6.** *In re Adoption of Missy M.*, 133 P.3d 645, 653 (Alaska 2006) (emphasis in original) (quoting *In*

*re Adoption of B.S.L.*, 779 P.2d 1222, 1226 (Alaska 1989)).

**7.** *S.K.L.H.*, 204 P.3d at 327 n. 28 (citations omitted).

**8.** Unif. Adoption Act § 3(3) (superseded 1994), 9 U.L.A. 143 (1999).

**9.** Unif. Adoption Act § 1–102, 9 U.L.A. 22 (1999) (emphasis added).

relationship with his or her own child would not qualify to adopt.

In the past we have looked to the 1994 revision of the Act and its commentary for guidance on adoption issues.[10] Guided by the 1994 Act, we conclude that a biological parent adoption is permissible only where the petitioning parent does not have a legal parent-child relationship with the child. One such situation occurs where the parental relationship has previously been severed as a matter of law.[11] A second scenario may exist where a biological father never established his parental rights—for instance, where he discovers that he had unknowingly fathered a child, and wishes to establish his parental rights.[12] While these examples are not necessarily exhaustive, they are illustrative of the unusual conditions that should be in place before a biological parent petitions for adoption. Otherwise, the trial court should deny the petition immediately and revert the proceeding to a custody determination.[13]

In the present case, Katz already had a legal parent-child relationship with Xavier. Smith's paternity was known, and he had previously rejected a proposed custody arrangement giving Katz full legal and primary physical custody. Alaska Statute 25.23.020(a) was not designed for a parent to terminate another parent's parental rights as a substitute proceeding for a custody dispute. The superior court rightly denied Katz's petition and awarded custody instead.[14]

## V. CONCLUSION

In the absence of the threshold circumstances necessary for a biological parent

adoption, full custody is the best outcome that Katz could have received under the circumstances of this case. This is exactly what the superior court awarded to Katz, and we see no reason to disturb that decision.

We AFFIRM the superior court's denial of Katz's adoption petition.

---

**10.** *E.g., S.K.L.H.*, 204 P.3d at 327; *In re Adoption of Keith M.W.*, 79 P.3d 623, 628 & nn. 39–42 (Alaska 2003).

**11.** *E.g., Leake v. Grissom*, 614 P.2d 1107, 1109 (Okla.1980).

**12.** *See* Ashley L. Driver, *Confusing Plain Language: The Compelling but Counterintuitive Need for Adoption by a Biological Parent*, 63 Ark. L. Rev. 139, 148–49 (2010).

**13.** *See* AS 25.23.120(c)-(d). AS 25.23.120(c) provides that if, at the conclusion of an adoption hearing, "the court determines that the required consents have been obtained or excused and that the adoption is in the best interest of the person to be adopted, it may issue a final decree of adoption." But under AS 25.23.120(d), "[i]f the

requirements for a decree under (c) of this section have not been met, the court shall dismiss the petition and determine, in the best interests of the minor, the person including the petitioner to have custody of the minor."

**14.** In light of our determination that Alaska's adoption statute does not permit adoption under the circumstances of this case, we find it unnecessary to address any of Katz's arguments on appeal. But we have reviewed all of them—concerning the superior court's best interests finding, the superior court's denial of Katz's bifurcation request, the equal protection claim, and the test for abandonment—and find them all to be without merit.