*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANGELICA C., | ) | |
| | ) | Supreme Court Nos. S-16874/17093 |
| Petitioner, | ) | (Consolidated) |
| | ) | |
| v. | ) | Superior Court No. 1JU-13-00945 CI |
| | ) | |
| JONATHAN C., | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 7433 – March 20, 2020 |
| | ) | |
| | ) | |
| ANGELICA C., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHAN C., | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Petition for Review in File No. S-16874 and appeal in File No. S-17093 from the Superior Court of the State of Alaska, First Judicial District, Juneau, Louis J. Menendez, Judge.

Appearances: Angelica C., pro se, Petersburg, Petitioner-Appellant. Fred W. Triem, Petersburg, for Respondent-Appellee. Michael P. Heiser, Ketchikan, for Intervenors Miles C. and Tonya C. Christine Oberholtzer, Anchorage, for Amicus Curiae Alaska Network on Domestic Violence and Sexual Assault. Brooke Berens, Assistant Public Advocate, and Chad Holt, Public Advocate,

Anchorage, for Amicus Curiae the Office of Public Advocacy. Anna R. Jay, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Amicus Curiae State of Alaska.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

A 19-year-old man had a sexual relationship with a 13-year-old girl and she became pregnant. The man pleaded guilty to attempted sexual abuse of a minor in the second degree. While the man was incarcerated the girl gave birth to their son. When the girl was 17, she was arrested and sent to a juvenile correctional facility. A dispute arose over custody of the child and the superior court ultimately entered a custody order based on the parents' stipulation. The mother was to have primary physical custody and the father would have regular visitation.

After the mother's living situation became unstable, the father sought to modify the custody order. Those proceedings, which included an earlier appeal to this court, resulted in two orders of relevance here. First, the mother sought to terminate the father's parental rights because his paternity was rooted in a criminal sex act. The superior court rejected the mother's interpretation of former AS 25.23.180(e) — which describes an "independent proceeding" for the termination of parental rights of sexual abusers — and dismissed her petition. She filed a petition for review of this decision, which we granted. Meanwhile, the superior court continued with the father's motion to modify custody and ultimately awarded sole custody to the father — with visitation for the mother and both sets of grandparents — after concluding that he had overcome the

domestic violence presumption that would otherwise bar his custody. The mother appeals that order.

We consolidated the petition for review and appeal for oral argument and decision. We conclude that in the termination case the superior court erred by rejecting the mother's petition to terminate the father's parental rights, and in the custody case it erred by failing to properly integrate the father's sexual abuse of the mother into its best interests analysis for awarding custody. We reverse both orders and remand the case for the superior court to re-examine the petition to terminate parental rights and — if the father's parental rights are not terminated — to conduct a new best interests analysis to determine custody.

## II. FACTS AND PROCEEDINGS

### A. Background Facts

When Jonathan C. was 18 and 19 years old he had an ongoing sexual relationship with 13-year-old Angelica C., who became pregnant. Jonathan pleaded guilty to attempted sexual abuse of a minor in the second degree, and he was incarcerated when Anglica gave birth at age 14 to a son, J.T., in March 2010. Jonathan was released in March 2011.

In December 2012, when Angelica was 17, she was arrested for theft, criminal trespass, and resisting arrest, and she remained in custody until she was released from McLaughlin Youth Center in April 2014. Her parents — Miles and Tonya C. — cared for J.T. in her absence, and they petitioned for guardianship of their grandson in January 2013. Jonathan opposed Angelica's parents' petition, and in December 2013 he initiated a separate action seeking custody of J.T. The cases were consolidated, and Angelica's parents ultimately withdrew their petition for guardianship. Jonathan and Angelica avoided trial in the custody case by reaching a compromise — primary physical custody to Angelica, regular visitation for Jonathan, and shared legal custody — and in

September 2014 the superior court issued a custody order based on this stipulated agreement.

B.  **Custody Proceedings**

1.  **The 2016 custody order**

At the time of the stipulated order, Angelica lived in Haines and Jonathan lived in Petersburg. By late 2014 Angelica and J.T. moved to Petersburg. Angelica's parents remained in Haines, and Angelica struggled to support J.T. on her own. According to the guardian ad litem in the case, Angelica "had no money, at times no food, and she was staying in an apartment frequented by drug addicts." The guardian ad litem filed a report of harm with the Office of Children's Services, and Angelica agreed to a safety plan placing J.T. with Jonathan's father, Victor T., and Victor's wife. Victor cared for J.T. intermittently during this time. He also allowed Angelica to work at his restaurant, and on several occasions he provided food to Angelica and her then-boyfriend.

In March 2015 Angelica placed J.T. with her parents in Haines, but she remained in Petersburg. In September 2015 Jonathan moved to modify the custody arrangement. At a hearing in January 2016 the superior court received evidence that Angelica lacked a stable residence, that she remained unemployed and depended on others for food, and that her appearance and conduct indicated that she was abusing drugs. Angelica was unable to rebut this testimony because she failed to appear at the January hearing or show good cause for her absence.

While the court had many reasons to not place J.T. with Angelica, it also identified problems with granting custody to Jonathan. He was between jobs, had a three-month old child with a new partner, and remained on probation. The special master assigned to the case found that Jonathan had a history of perpetrating domestic violence based on his repeated acts of sexual abuse against Angelica, making him

presumptively ineligible for custody.[1]  The superior court was uncertain whether this analysis was sound.  It explained:

> At this point in the litigation, the court questions applicability of that finding based on this record and finds either that the presumption [against granting custody based on domestic violence] has been rebutted, waived, or mooted out by agreement of the parties on September 19, 2014.  This issue may be re-examined in the future.  Regardless, the court is not awarding custody to [Jonathan].

In July 2016 the court granted custody to Victor.

Angelica appealed, and we reversed the custody order because she had not been given adequate notice that Victor — a non-parent who was not a formal party to the custody case — might receive custody of J.T.[2]  The court determined that both Angelica and Jonathan were unable at the time to care for J.T.  The court did not grant non-parent custody to Angelica's parents because of their history of "hostility" toward Jonathan, which included violating an agreement to return J.T. to Jonathan's care after a visit with them.

### 2.    The 2016 petition to terminate parental rights

Shortly before the superior court awarded custody to Victor in July 2016, Angelica filed a petition in the custody case to terminate Jonathan's parental rights.  She

---

[1]    *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence . . . may not be awarded [custody].");  AS 25.24.150(h) ("A parent has a history of perpetrating domestic violence . . . if the court finds that . . . the parent has engaged in more than one incident of domestic violence.");  AS 25.90.010 (adopting for Title 25 the definition of domestic violence found in Title 18);  AS 18.66.990 (defining "domestic violence" to include "an offense . . . or an attempt to commit [an] offense" such as "a crime against the person under AS 11.41");  AS 11.41.436(a) (defining sexual abuse of a minor in the second degree).

[2]    *Angelica C. v. Jonathan C.*, No. S-16434 (Alaska Supreme Court Order Aug. 2, 2017) (citing *Elton H. v. Naomi R.*, 119 P.3d 969, 980 (Alaska 2005)).

based her petition on former AS 25.23.180(e), which allowed the filing of a petition to terminate parental rights in an "independent proceeding" in cases of sexual abuse of a minor that resulted in conception of a child.[3]  The court stayed the termination petition pending our decision on the appeal from its custody order.

On remand after we issued our decision, the superior court denied Angelica's petition to terminate Jonathan's parental rights.  The court relied on language in former AS 25.23.180(c) that referred to termination "by a court order issued in connection with a proceeding under this chapter or a proceeding under AS 47.10."[4]  Because the case before the superior court was a custody case, rather than an adoption case under AS 25.23 or a child in need of aid (CINA) proceeding under AS 47.10, the court concluded that the statute did not permit it to terminate Jonathan's parental rights.  Angelica filed a petition for review, which we granted.

### 3.     The 2018 custody order

After denying Angelica's petition to terminate Jonathan's parental rights, the superior court proceeded with the custody case.[5]  Angelica and Jonathan each sought to increase custody for themselves or their parents and to limit the other to visitation.  Angelica's parents emphasized the harm caused by Jonathan's sexual abuse of Angelica, and Angelica testified that Jonathan had broken his promises to be an involved father to J.T.  Angelica and her parents also noted that they had been the primary caregivers for J.T. from infancy until he was placed with Victor in 2016, and they argued that J.T.

---

[3]      Former AS 25.23.180(c)(3), (e) (1987), *amended by* ch. 24, § 12, SLA 2018.

[4]      Former AS 25.23.180(c) (1987), *amended by* ch. 24, § 12, SLA 2018.

[5]      On appeal Angelica assigns error to several of the superior court's orders during this period.  Because we are remanding the case on other grounds, we do not address her arguments or describe the facts underlying them.

would benefit from the consistency of returning to their care. Jonathan contended that Angelica was unfit to parent J.T. due to her lack of employment, dependence on her parents, and substance abuse issues. He also contrasted the cooperativeness he and Victor had shown with the antagonism Angelica and Miles C. had displayed. The guardian ad litem's analysis was similar to Jonathan's, and she recommended that Jonathan be granted sole legal and primary physical custody.

In April 2018 the superior court granted Jonathan sole legal and primary physical custody, pending his completion of a batterers' intervention program. The court recognized that Alaska law presumes that custody may not be awarded to a parent who has a history of perpetrating domestic violence unless that parent satisfies certain requirements.[6] But the court was skeptical that Jonathan's conviction for attempted sexual abuse of a minor made him a domestic violence perpetrator:

> The court remains as dubious today as it was in 2016 that [Jonathan]'s conviction is applicable to finding that he has a history of perpetrating domestic violence within the meaning of AS 25.24.150. However, it is better that the court proceed with caution than that it reject [Angelica's parents'] argument and jeopardize the viability of this custody order. The court accepts that [Jonathan]'s conviction triggers the rebuttable presumption that he is disqualified from having custody because of a history of perpetrating domestic violence. [Jonathan] can rebut that presumption by providing proof he has completed a batterers' intervention program.

---

[6] *See* AS 25.24.150(g) ("There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence . . . may not be awarded [custody.]"); AS 25.24.150(h) ("The presumption may be overcome by a preponderance of the evidence that the perpetrating parent has successfully completed an intervention program for batterers, where reasonably available, that the parent does not engage in substance abuse, and that the best interests of the child require that parent's participation as a custodial parent . . . .").

The court later concluded that a parenting course Jonathan completed while incarcerated, combined with counseling dating back to 2014, was an adequate substitute because no batterers' intervention programs were available in Petersburg. In June 2018 the court awarded Jonathan immediate custody.

The court's discussion of the custody issue included extensive factual findings and a factor-by-factor best interests analysis. The court found that every best interests factor either favored Jonathan or was neutral.[7] While acknowledging that "Angelica's life seems to be improving," the court noted that "Angelica has mental health issues, including anxiety and depression. She has struggled with homelessness, unemployment, and substance abuse." The court concluded that Angelica was "in no

---

[7] AS 25.24.150(c) directs the court to consider nine best interests factors. The following four factors were most relevant to the court's analysis:

> (2) the capability and desire of each parent to meet [the child's] needs;
>
> . . . .
>
> (6) the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child;
>
> (7) any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents; [and]
>
> (8) evidence that substance abuse by either parent . . . directly affects the emotional or physical well-being of the child . . . .

position to assume primary responsibility" for J.T. because she could not meet his needs.[8]

One of the best interests factors is each parent's willingness to foster a relationship between the child and the other parent.[9] The court stated that it did not hold it against Angelica that she had petitioned to terminate Jonathan's parental rights, but it did find that she and her parents wanted to limit or eliminate Jonathan's involvement in J.T.'s life. Another factor is the parents' history of domestic violence.[10] The court made findings on the absence of domestic violence in the parents' respective homes, but it did not acknowledge and weigh Jonathan's sexual abuse of Angelica. Because the court found that the balance of the best interests factors favored Jonathan, the court awarded primary physical custody to Jonathan; it also awarded him sole legal custody.

Relevant to this matter, in September 2018 legislative amendments to the "independent proceeding" provision took effect,[11] and in October Angelica petitioned, in a new case, to terminate Jonathan's parental rights. In addition to the parties' briefing, we received briefing from three amici curiae — the Alaska Network on Domestic Violence and Sexual Assault, the Office of Public Advocacy (OPA), and the State of Alaska — on the interpretation of AS 25.23.180.[12] We consolidated the petition for review and appeal for oral argument and decision.

## III. STANDARDS OF REVIEW

We review questions of statutory interpretation de novo, "adopting the rule

---

[8] *See* AS 25.24.150(c)(2), (8).

[9] *See* AS 25.24.150(c)(6).

[10] *See* AS 25.24.150(c)(7).

[11] *See* ch. 24, §§ 12-17, SLA 2018.

[12] We thank all amici for their thoughtful briefing.

of law that is most persuasive in light of precedent, reason, and policy."[13] "When construing statutes de novo, we consider three factors: 'the language of the statute, the legislative history, and the legislative purpose behind the statute.' "[14]

"Superior courts have broad discretion in child custody decisions, and we will reverse only if findings of fact are clearly erroneous or if the superior court abused its discretion."[15] "Whether the court's findings on domestic violence are supported by the record is a question of fact which we review for clear error."[16] "A factual finding is clearly erroneous when a review of the record leaves [us] with a definite and firm conviction that the superior court has made a mistake."[17] "An abuse of discretion exists where the superior court 'considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others.' "[18]

## IV. DISCUSSION

We consider first the question raised in Angelica's petition for review:

---

[13]     *Schacht v. Kunimune*, 440 P.3d 149, 153 (Alaska 2019) (quoting *Toliver v. Alaska State Comm'n for Human Rights*, 279 P.3d 619, 622 (Alaska 2012)).

[14]     *City of Valdez v. State*, 372 P.3d 240, 248 (Alaska 2016) (quoting *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012)).

[15]     *Geldermann v. Geldermann*, 428 P.3d 477, 481 (Alaska 2018) (quoting *Riggs v. Coonradt*, 335 P.3d 1103, 1106 (Alaska 2014)).

[16]     *Bruce H. v. Jennifer L.*, 407 P.3d 432, 436 (Alaska 2017) (quoting *Caroline J. v. Theodore J.*, 354 P.3d 1085, 1090 (Alaska 2015)).

[17]     *Geldermann*, 428 P.3d at 481 (alteration in original) (quoting *Riggs*, 335 P.3d at 1106).

[18]     *Id.* (quoting *Riggs*, 335 P.3d at 1106).

whether the superior court erred by denying her petition to terminate Jonathan's parental rights. We then discuss the court's order on Jonathan's motion to modify custody.

> **A. The Superior Court Erred In Concluding That Former AS 25.23.180(c) Does Not Permit Termination Of Parental Rights In Custody Cases.**

The superior court denied Angelica's petition to terminate Jonathan's parental rights without reaching the merits because it concluded that former AS 25.23.180(c) was inapplicable to custody cases. The court relied in part on *In re Adoption of Xavier K.*,[19] in which we said:

> Two means exist for involuntarily terminating parental rights in Alaska. The first is the Children in Need of Aid (CINA) statute, which lays out rigorous criteria for parental unfitness that the state must prove by clear and convincing evidence. The second is through adoption, which may take place without the consent of the biological parent(s) under the conditions outlined in AS 25.23.050.[20]

We also made a similar statement in *Nelson v. Jones*.[21] But the question raised in Angelica's petition for review was not before us in those cases,[22] and we disavow our prior dicta to the extent that it is inconsistent with our conclusions today.

---

[19] 268 P.3d 274 (Alaska 2012).

[20] *Id.* at 276.

[21] 944 P.2d 476, 479 (Alaska 1997) ("Alaska provides for the termination of parental rights only in the context of child in need of aid (CINA) proceedings under AS 47.10.080 and adoption proceedings under AS 25.23.180." (footnotes omitted) (citing *Perry v. Newkirk*, 871 P.2d 1150, 1151 (Alaska 1994))).

[22] *See Xavier K.*, 268 P.3d at 276-77 (describing attempt by child's biological mother to use adoption statutes to sever biological father's parental rights by adopting her own child); *Nelson*, 944 P.2d at 479 (summarizing father's argument that restrictions on visitation constituted a de facto termination of parental rights).

## 1. The 1987 amendments to former AS 25.23.180 permitted an "independent proceeding" to terminate parental rights that is distinct from adoption or CINA proceedings.

"Statutory interpretation in Alaska begins with the plain meaning of the statute's text."[23] The relevant portions of former AS 25.23.180 — as amended in 1987, prior to its amendment in 2018 — follow:

> (c) The relationship of parent and child may be terminated by a court order issued in connection with a proceeding under this chapter or a proceeding under AS 47.10 on the grounds
>
> > (1) specified in AS 47.10.080(o) or 47.10.088;
> >
> > (2) that a parent who does not have custody is unreasonably withholding consent to adoption, contrary to the best interest of the minor child; or
> >
> > (3) that the parent committed an act constituting sexual assault or sexual abuse of a minor . . . that resulted in the conception of a child and that termination of the parental rights of the biological parent is in the best interests of the child.
>
> . . . .
>
> (e) A petition for termination of the relationship of parent and child made in connection with an adoption proceeding or in an independent proceeding for the termination of parental rights on grounds set out in (c)(3) of this section may be made by [one of several movants].[24]

This language alone is sufficient for us to conclude that the former statute permitted an "independent proceeding" distinct from adoption and CINA proceedings.

Former section .180(e) referred to petitions to terminate parental rights "in connection with an adoption proceeding or in an independent proceeding," indicating

---

[23] *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 98 (Alaska 2012).

[24] Former AS 25.23.180(c), (e) (1987), *amended by* ch. 24, § 12, SLA 2018.

that these are two different types of proceedings. Because former section .180(c) further distinguished "a proceeding under this chapter" (i.e., AS 25.23) from "a proceeding under AS 47.10," it must be the case that an "independent proceeding" is distinct from both adoption proceedings under Title 25, Chapter 23 of the Alaska Statutes and CINA proceedings under Title 47, Chapter 10. The fact that these three grounds were arrayed in list form further confirms this reading.

"Whenever possible 'we interpret each part or section of a statute with every other part or section, so as to create a harmonious whole.' "[25] The amici curiae note several provisions under Title 25, Chapter 23 indicating that an "independent proceeding" is distinct from adoption or CINA proceedings. For example, the time limits for appealing adoptions and termination orders under former AS 25.23.180 were distinct.[26] The disclosure requirements in adoption cases are also applied expressly to termination cases under former AS 25.23.180.[27] Further, the statutes created distinct venue requirements for adoption proceedings, CINA-related adoptions, and terminations

---

[25]     *Mat-Su Valley Med. Ctr., LLC v. Bolinder*, 427 P.3d 754, 763 (Alaska 2018) (quoting *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013)).

[26]     *Compare* AS 25.23.140(b) ("[U]pon the expiration of one year after an adoption decree is issued, the decree may not be questioned . . . ."), *with* former AS 25.23.140(c) (1987), *amended by* ch. 24, § 7, SLA 2018 ("[O]ne year after a decree is issued terminating parental rights on grounds set out in AS 25.23.180(c)(3), the order may not be challenged . . . .").

[27]     *See* former AS 25.23.150(c) (1987), *amended by* ch. 24, § 9, SLA 2018 ("[A] person may not disclose the identity or address of an adoptive parent, an adopted child, a child who is the subject of a proceeding under AS 25.23.180(c)(3), or a biological parent whose parental rights have been terminated on grounds set out in AS 25.23.180(c)(3).").

under former AS 25.23.180.[28]

Finally, the amici curiae observe that a portion of the Office of Public Advocacy's enabling statute "would be entirely superfluous" if former AS 25.23.180 did not permit termination actions outside the adoption and CINA contexts. This is because AS 44.21.410(a)(5) directs OPA to "provide legal representation" in several types of proceedings, including "in cases involving petitions to adopt a minor under AS 25.23.125," "in children's proceedings under AS 47.10.050," and in "petitions for the termination of parental rights on grounds set out in AS 25.23.180."[29] If the "independent proceeding" under former AS 25.23.180 were synonymous with either adoption or CINA proceedings, there would be no need for a separate provision for the independent termination action in OPA's enabling statute.

For these reasons, we conclude that the 1987 amendments to former AS 25.23.180 (which were in effect throughout the superior court proceedings) permitted Angelica to petition for termination of Jonathan's parental rights in the pending custody case.[30]

### 2. The 2018 amendments to AS 25.23.180 merely clarify the statute's meaning.

The legislature recently amended AS 25.23.180, and its action was

---

[28] *Compare* AS 25.23.030(a) ("Proceedings for adoption shall be brought . . . ."), *with* AS 25.23.030(d) ("The venue for an adoption proceeding for a child in state custody under AS 47.10 . . . ."), *and with* former AS 25.23.030(c) (1987), *amended by* ch. 24, § 1, SLA 2018 ("Proceedings for the termination of parental rights on the grounds set out in AS 25.23.180(c)(3) shall be brought . . . .").

[29] Former AS 44.21.410(a)(5) (1987), *amended by* ch. 24, § 18, SLA 2018.

[30] A parent or other interested party also could file an independent action under AS 25.23.180 even if there were no current custody case. *See* AS 25.23.180(c), (e).

informed by the case between Angelica and Jonathan. Senator Berta Gardner sponsored Senate Bill 134 in response to a concern arising from the superior court's decision in this case that AS 25.23.180 did not permit termination of parental rights outside the adoption and CINA contexts.[31] Senator Gardner stated that the bill did not "set any new policy" and that it was intended "to simply make existing policy abundantly clear."[32] These comments notwithstanding, we have said that asking

> "whether a legislature which has amended a statute intends to change or merely clarify the statute is usually fruitless" because the legislature's opinion as to the meaning of a statute passed by an earlier legislature is no more persuasive than that of a knowledgeable commentator.[33]

Thus, we independently decide whether the recent amendments change the effect of AS 25.23.180 or merely clarify its meaning.

The principal change made by S.B. 134 was to restructure AS 25.23.180(c) for clarity. The 2018 amendments incorporated the "independent proceeding" language of former AS 24.23.180(e) directly into AS 25.23.180(c):

> (c) The relationship of parent and child may be terminated by a court order issued in connection with a proceeding

---

[31] *See* Statement of Sen. Berta Gardner at 1:37:37-1:38:20, 1:56:27-1:57:27 (Hearing on Senate Bill (S.B.) 134 Before the Sen. Jud. Comm., 30th Leg., 2d Sess. (Apr. 16, 2018) ("[Miles C.] was very instrumental in bringing the issue to my attention and starting our research . . . .").

[32] Statement of Sen. Berta Gardner at 3:04:02-3:04:50, 3:05:12-3:05:16, Hearing on S.B. 134 Before the H. Health & Soc. Servs. Comm., 30th Leg., 2d Sess. (Apr. 24, 2018).

[33] *Hageland Aviation Servs., Inc. v. Harms*, 210 P.3d 444, 448 n.12 (Alaska 2009) (quoting *Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1252 (Alaska 1988)).

> (1) under this chapter or a proceeding under AS 47.10 on the grounds
>
>> (A) specified in AS 47.10.080(o) or 47.10.088; or
>>
>> (B) that a parent who does not have custody is unreasonably withholding consent to adoption, contrary to the best interest of the minor child;
>
> (2) under this chapter, a proceeding under AS 47.10, or an independent proceeding on the grounds that the parent committed an act constituting sexual assault, sexual abuse of a minor, or incest . . . .[34]

This new structure better reflects our interpretation of the 1987 statute discussed above by making clear that a petition for termination of parental rights based on sexual assault or abuse can proceed in an adoption case, a CINA case, or in an "independent proceeding."[35]

> The final change of any import here was the addition of AS 25.23.180(o):
>
> A petition for termination of parental rights under (c)(2) of this section may be filed to initiate an independent proceeding not connected to a petition for adoption or a proceeding under AS 47.10.[36]

This provision emphasizes the independence of the "independent proceeding" described above. We disagree with Jonathan that the addition of this provision constitutes a "legislative admission" that the former law did not permit termination of parental rights outside of adoption or CINA proceedings. This provision merely reflects the

---

[34] Ch. 24, § 12, SLA 2018.

[35] The legislature also added incest as a basis for terminating parental rights, but that has no bearing on this case. *See id.*

[36] Ch. 24, § 17, SLA 2018.

legislature's goal of making it "abundantly clear" that a petition like Angelica's can proceed to the merits,[37] and we conclude that the effect of the 2018 amendments was to clarify the statute.

We reverse the superior court's order denying Angelica's petition.[38] Jonathan testified that he had sexual intercourse with Angelica multiple times when she was 13 years old and he was at least 18 years old, and his admitted sexual abuse of Angelica is "an act constituting sexual assault or sexual abuse of a minor."[39] Jonathan is subject to having his parental rights terminated, but only if the superior court determines that it is in J.T.'s best interests to do so.[40]

### 3. The best interests factors to be applied under AS 25.23.180

To terminate parental rights under former AS 25.23.180(c)(3), the court must consider whether termination "is in the best interests of the child." Among various

---

[37] Statement of Sen. Berta Gardner at 3:05:12-3:05:16, Hearing on S.B. 134 Before the H. Health & Soc. Servs. Comm., 30th Leg., 2d Sess. (Apr. 24, 2018).

[38] As we noted above, Angelica has filed — in a new case — a petition under the statute as amended in 2018. We expect that the superior court will consolidate the custody case with the new case.

[39] Former AS 25.23.180(c)(3) (1987), *amended by* ch. 24, § 12, SLA 2018; *see* AS 11.41.436(a)(1) ("An offender commits the crime of sexual abuse of a minor in the second degree if . . . being 17 years of age or older, the offender engages in sexual penetration with a person who is 13, 14, or 15 years of age and at least four years younger than the offender . . . ."). Because Jonathan admits to this conduct constituting sexual abuse of a minor, we need not decide whether Jonathan's conviction for *attempted* sexual abuse of a minor in the second degree, standing alone, establishes that he committed "an act constituting sexual assault or sexual abuse of a minor." AS 25.23.180(c)(3).

[40] *See* former AS 25.23.180(c)(3) (1987), *amended by* ch. 24, § 12, SLA 2018 (providing that courts must consider whether "termination of the parental rights of the biological parent is in the best interests of the child").

arguments Jonathan raises regarding AS 25.23.180, he criticizes its failure to "provide guidelines for determining best interests." None of the parties have identified anything in the legislative history of the 1987 law that would clarify which factors a court should use in making this determination. We also have been unable to find any relevant legislative history.

The superior court did not reach the best interests issue because it concluded that Angelica could not petition to terminate Jonathan's parental rights in the custody matter. The issue is therefore not before us and we choose not to decide it definitively at the present juncture of this case. The following observations are intended to aid the superior court in determining the best interests of a child in the independent parental rights termination context.

We agree with the parties that the best interests factors in AS 25.24.150(c) — which govern custody cases — can be at least a starting point for a termination action under AS 25.23.180. The relevance of these factors is clear; what remains to be clarified is whether they are sufficient. Custody orders, unlike orders terminating parental rights, "typically do not sever one party's constitutionally protected parental rights."[41] We have said that when deciding whether to replace a biological parent through an adoption proceeding, "courts are free to consider relevant AS 25.24.150(c) factors for guidance in making a best interests determination," but doing so is not mandatory.[42]

In the CINA context, when deciding if a parent has remedied the conditions that place the child at risk of harm, the legislature has directed that

---

[41]    *In re Adoption of Hannah L.*, 390 P.3d 1153, 1159 (Alaska 2017).

[42]    *Id.* at 1160.

the court may consider any fact relating to the best interests of the child, including

> (1) the likelihood of returning the child to the parent within a reasonable time based on the child's age or needs;
>
> (2) the amount of effort by the parent to remedy the conduct or the conditions in the home;
>
> (3) the harm caused to the child;
>
> (4) the likelihood that the harmful conduct will continue; and
>
> (5) the history of conduct by or conditions created by the parent.[43]

But the ultimate decision whether to terminate parental rights in a CINA case turns on "the best interests of the child,"[44] a more "capacious" standard which calls for "a comprehensive judgment as to whether the child's best interests favor the termination of parental rights."[45]

In adoption and CINA proceedings, the stakes are higher than in an ordinary custody case: in these cases the court is asked to terminate a parent's parental rights, not just to decide the nature and terms of a parent's physical custody rights. The same is true for a termination action under AS 25.23.180. The irrevocable termination of parental rights is normally accompanied by heightened protections for the adverse parent.[46] Yet the termination of parental rights procedure at issue here also reflects a

---

[43]     AS 47.10.088(b).

[44]     AS 47.10.088(c).

[45]     *Karrie B. ex rel. Reep v. Catherine J.*, 181 P.3d 177, 186 (Alaska 2008).

[46]     *See, e.g.*, AS 47.10.086(a) (requiring the State to make "timely, reasonable
                                                                    (continued...)

choice by the legislature to protect the victims of sexual abuse from being subjected to years-long custody disputes with their assailants, re-victimizing them; this policy militates in favor of weighing the underlying sexual abuse more heavily, and it seems that the victim-parent's rights should receive strong, though not necessarily dispositive, consideration. The court should also consider the child's rights: it may not be in the child's best interests to have an ongoing child-parent relationship with a parent who has a history of sexual abuse.

In sum, when the superior court determines on remand whether it is in the child's best interests to terminate parental rights under AS 25.23.180(c), it should consider the relevant best interests factors enumerated in the custody and adoption contexts, as well as other factors germane to the child's best interests, giving appropriate weight to the legislative policy choices described above.[47]

## B. The Superior Court Erred In Granting Jonathan's Motion To Modify Custody.

Angelica also appealed the superior court's order awarding custody to Jonathan. We conclude the superior court committed legal error when it failed to account for Jonathan's sexual abuse of Angelica in its analysis of two of the best interests factors. Because these errors affected the relative weight the court gave to each of the factors in its analysis, we also conclude that the court abused its discretion in failing to consider a statutory factor.

---

[46]    (...continued)
efforts" to reunify parent and child); AS 47.10.088(a) (requiring a court to make certain findings by "clear and convincing evidence" before terminating parental rights).

[47]    We repeat that AS 25.23.180 reflects the legislature's enactment of the public policy of Alaska; the legislature is free to explicitly answer the additional policy question of which best interests factors it wants courts to consider in these cases.

The legislature has expressed its intent that in general "both parents have the opportunity to guide and nurture their child."[48] But in 2004 the legislature clarified its intent when it enacted a set of presumptions and conditions for custody determinations in cases involving domestic violence.[49] Alaska Statute 25.24.150(g) provides: "There is a rebuttable presumption that a parent who has a history of perpetrating domestic violence against the other parent . . . may not be awarded" custody of the child. And AS 25.25.150(h) defines "a history of perpetrating domestic violence" as engaging in more than one incident of domestic violence or causing serious physical injury during a single incident. Domestic violence includes the crime of sexual abuse of a minor,[50] and Jonathan admits that he committed more than one act of sexual abuse against Angelica. He therefore has a history of perpetrating domestic violence against Angelica, and the rebuttable presumption against his custody of J.T. applies.

Despite remaining "dubious" that Jonathan's sexual abuse of Angelica was an act of domestic violence that triggered the rebuttable presumption against Jonathan, the superior court nevertheless accepted that the presumption applied. And the court determined that he had overcome this presumption by attending a parenting course while he was incarcerated and counseling after his release. But when the court addressed the various AS 25.24.150(c) best interests factors, it did not mention, much less weigh, that Jonathan sexually abused Angelica on multiple occasions.

---

[48] Ch. 88, § 1(a), SLA 1982.

[49] *See* ch. 111, § 5, SLA 2004.

[50] *See* AS 25.90.010 (adopting for Title 25 the definition of domestic violence found in Title 18); AS 18.66.990 (defining "domestic violence" to include "an offense . . . or an attempt to commit [an] offense" such as "a crime against a the person under AS 11.41"); AS 11.41.436(a)(1) (defining offense of sexual abuse of a minor in the second degree).

In its 2018 order conditionally granting custody to Jonathan, the superior court considered and applied each of the best interests factors to the facts before it, including factors (6) (willingness to facilitate a parent-child relationship) and (7) (domestic violence).[51] But its analysis was devoid of the defining fact of this case: Jonathan's sexual abuse of Angelica.

Alaska Statute 25.24.150(c) enumerates nine factors that the superior court "shall consider" in determining the best interests of the child. Factor (6) is

> the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child, *except that the court may not consider this willingness and ability if one parent shows that the other parent has sexually assaulted or engaged in domestic violence against the parent* or a child, and that a continuing relationship with the other parent will endanger the health or safety of either the parent or the child.[52]

Factor (7) directs the court to consider "any evidence of domestic violence, child abuse, or child neglect in the proposed custodial household or a history of violence between the parents."[53]

The superior court weighed what the parties had said and shown about their willingness to facilitate J.T.'s relationship with his entire family. The court stated that it "does not hold anything against Angelica or her parents for seeking to terminate [Jonathan's] parental rights" and that its analysis of the "willingness" factor had "ignor[ed] the termination action." But the court's analysis also ignored *the underlying fact* of that action: Jonathan sexually abused and impregnated Angelica. Angelica's

---

[51]   *See supra* note 8 and accompanying text.

[52]   AS 25.24.150(c)(6) (emphasis added).

[53]   AS 25.24.150(c)(7).

willingness to facilitate a relationship between J.T. and Jonathan should have been excluded from the court's analysis. The court excluded from consideration only her attempt to terminate Jonathan's parental rights but not other evidence of her unwillingness to facilitate a relationship between J.T. and Jonathan, such as her reluctance to share custody with Jonathan and disparaging comments she made about him. Similarly, when the court considered the domestic violence factor, it examined the record for evidence of violence in the homes of Jonathan, Angelica's parents, and Victor. But it did not mention the fact that Jonathan had illegal sexual relations with Angelica on multiple occasions, impregnated Angelica while she was a minor, and was later convicted of attempted sexual abuse against her. Because factors (6) and (7) required the court to consider Jonathan's sexual abuse of Angelica in its best interest analysis, the court committed legal error when it failed to account for this seminal fact.

The court's conclusion that Jonathan rebutted the domestic violence presumption did not permit it to thereafter ignore the underlying facts of the conduct making him a domestic violence perpetrator when it made its best interests analysis. A rebuttable presumption is a legal inference drawn from certain facts, and it may be overcome by the introduction of contrary evidence.[54] Under Alaska law, a parent who has a history of perpetrating domestic violence is presumed unfit for custody;[55] to rebut the presumption is only to once again become *eligible* for custody. Once Jonathan ostensibly rebutted the domestic violence presumption, he became eligible for custody of J.T., subject to the court's findings and weighing of the best interests factors. But the court could not ignore its finding that Jonathan had a history of perpetrating domestic

---

[54] *See Presumption, rebuttable presumption*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[55] *See* AS 25.24.150(g).

-23- 7433

violence nor could it ignore the underlying fact of his sexual abuse of Angelica, and both facts have implications for the best interests analysis.[56]

This oversight was crucial to the court's analysis of J.T.'s best interests, and it led the court to assign disproportionate weight to the best interests factors. The court therefore abused its discretion by failing to consider these highly relevant facts. We reverse the court's order granting sole custody to Jonathan and remand for further proceedings.

On remand — if the superior court determines not to terminate Jonathan's parental rights pursuant to Angelica's petition under AS 25.23.180 — the court must carefully apply the best interests factors consistent with our opinion. Because the court already found that Jonathan rebutted the presumption against custody,[57] it must conduct a new best interests analysis that (1) properly contemplates Jonathan's sexual abuse of Angelica, independent of the fact that he has rebutted the domestic violence presumption;

---

[56]    *See, e.g.*, *Kristina B. v. Edward B.*, 329 P.3d 202, 207-10 (Alaska 2014) (discussing rebutting the presumption, and then evaluating domestic violence in the best interests analysis by saying the court's findings regarding the presumption rebuttal were adequate to cover the best interests analysis); *Weinberger v. Weinmeister*, 268 P.3d 305, 311 (Alaska 2012) (applying AS 25.24.150(c)(6) domestic violence exception to willingness to facilitate factor and need for finding that continuing relationship would endanger health or safety of parent or child).

[57]    The superior court found that Jonathan rebutted the domestic violence presumption through a parenting course and ongoing therapy. Because Angelica does not challenge this on appeal, we leave intact the court's determination that Jonathan rebutted the presumption. We note that the legislature has not drawn distinctions among different forms of domestic violence with regard to a parent's burden in rebutting the domestic violence presumption. We previously concluded that "the legislature did not intend that completion of a batterers' intervention program should be the only way" to rebut the presumption. *Stephanie F. v. George C.*, 270 P.3d 737, 752 (Alaska 2012). We observe that it is not self-evident that a batterers' intervention program or similar treatment aimed at batterers is an appropriate response to a sexual abuse perpetrator.

(2) excludes evidence of Angelica's unwillingness to facilitate a relationship between J.T. and Jonathan; and (3) carefully analyzes the best interests factors in light of the legislature's clear intent to level the playing field for victims of domestic violence.[58]

## V. CONCLUSION

We REVERSE the superior court's order denying Angelica's petition to terminate Jonathan's parental rights. We REVERSE the superior court's custody order. We REMAND for further proceedings consistent with this opinion.

---

[58] The court may have to consider J.T.'s best interests twice: first when deciding whether to terminate Jonathan's parental rights and again if it reaches the motion to modify custody. As we discuss above, the question whether to sever J.T.'s child-parent relationship with Jonathan is different and weightier than the design of an appropriate custodial arrangement. While there will be overlap between the best interests factors, the court may weigh those factors differently in each analysis.