NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| YAKO WILLIAM COLLINS, | Court of Appeals No. A-12816 |
| Appellant, | Trial Court No. 3PA-08-00803 CR |
| v. | O P I N I O N |
| STATE OF ALASKA, | |
| Appellee. | No. 2704 — June 11, 2021 |

Appeal from the Superior Court, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Jane B. Martinez, Anchorage, under contract with the Public Defender Agency (initial brief), and Kelly R. Taylor, Assistant Public Defender (supplemental brief), and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Ed Sniffen, Attorney General Designate, Juneau, for the Appellee.

Before: Harbison, Judge, Mannheimer, Senior Judge, [*] and Lyle, Superior Court Judge. [**]

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

[**] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Judge MANNHEIMER.

Yako William Collins stands convicted of first-degree sexual assault, and the present appeal is the latest stage of the litigation to determine what law governs his sentencing.

In 2006, the Alaska legislature amended the provisions of AS 12.55.125 to establish significantly higher presumptive sentencing ranges for offenders convicted of sexual felonies. [1] Collins committed his sexual felony in 2008, so he is subject to one of the increased sentencing ranges established in the 2006 sentencing statute.

In Collins's first appeal, this Court held — by a two-to-one vote, over the dissent of Judge Bolger — that the 2006 sentencing statute implicitly created two new grounds for defendants to seek referral to the statewide three-judge sentencing panel (the judicial body which is authorized to sentence defendants outside of the prescribed presumptive ranges). *See Collins v. State*, 287 P.3d 791 (Alaska App. 2012).

More specifically, the *Collins* majority held that defendants who committed sexual felonies, and who were therefore subject to the increased sentencing ranges prescribed by the 2006 statute, were entitled to have their cases referred to the three-judge panel if these defendants showed either (1) that they did not have a history of unprosecuted sexual offenses, or (2) that they had prospects for rehabilitation which, in other offenders, would be considered "normal" or "good". *Collins*, 287 P.3d at 797. We therefore remanded Collins's case to the superior court so that Collins could renew his request to have his case referred to the three-judge panel.

After we announced our decision in *Collins*, the State petitioned the Alaska Supreme Court to review our decision. The supreme court granted the State's petition and agreed to review the case. But in early 2013 — about three months after this Court

---

[1] *See* SLA 2006, ch. 14, § 4.

issued the *Collins* decision, and while Collins's case was still pending before the supreme court — the Alaska legislature took action in response to *Collins*.

In legislation that was eventually enacted as SLA 2013, chapter 43, the legislature declared that this Court's majority opinion in *Collins* had misconstrued the 2006 sentencing statute. The legislature stated that it had *not* intended for sexual felony defendants to have their cases referred to the three-judge sentencing panel based on the two factors identified in the *Collins* majority opinion[2] — that, instead, Judge Bolger's dissent correctly characterized the intended meaning of the 2006 sentencing statute.[3] In the same session law, the legislature amended the two statutes that govern referrals to the three-judge sentencing panel, so that these statutes would explicitly incorporate Judge Bolger's interpretation.[4]

---

[2] Section 1(b) of SLA 2013, chapter 43 contains the following two legislative findings:

(1) in 2006, the legislature did not intend, by enacting [increased penalties for sexual felonies], and the legislature does not now intend[,] to create new or additional means for a defendant convicted of a sexual felony and sentenced under AS 12.55.-125(i) to obtain referral to a three-judge panel; [and]

(2) the legislature did not, in 2006, intend nor does the legislature now intend for a court to create new or additional means for a defendant convicted of a sexual felony and sentenced under AS 12.55.125(i) to obtain referral to a three-judge panel.

[3] *See* section 1(c) of SLA 2013, chapter 43.

[4] *See* sections 22 and 23 of SLA 2013, chapter 43. Specifically, the legislature amended AS 12.55.165 (the statute governing referrals to the three-judge panel) by adding subsection (c) which restricts a sentencing judge's authority to refer a case to the panel:

(c) A court may not refer a case to [the] three-judge panel ... if the defendant is being sentenced for a sexual felony under AS 12.55.125(i) and the request for the referral is based solely on the claim that the defendant, either singly or in combination, has

(continued...)

(The history of this 2013 legislation, and the specifics of this legislation, are more fully described in *State v. Seigle*, 394 P.3d 627, 631–32 (Alaska App. 2017).)

The new session law went into effect on July 1, 2013. Eight months later, toward the end of February 2014, the supreme court dismissed Collins's case without issuing a decision on the merits. The court simply declared that it had "improvidently granted" the State's petition for hearing. *See State v. Collins*, Supreme Court File No. S-14966, order dated February 25, 2014.

In the meantime, pursuant to our remand order in *Collins*, the superior court took up the issue of whether Collins's case should be referred to the three-judge sentencing panel based on either of the two factors identified in the *Collins* majority decision.

---

4 (...continued)

> (1) prospects for rehabilitation that are less than extraordinary; or
>
> (2) a history free of unprosecuted, undocumented, or undetected sexual offenses.

At the same time, the legislature enacted a corresponding amendment to AS 12.55.175 (the statute defining the authority of the three-judge panel) by adding a new subsection (f). This subsection states in pertinent part:

> (f) A defendant being sentenced for a sexual felony under AS 12.55.125(i) may not establish, nor may the three-judge panel find under (b) of this section or any other provision of law, that manifest injustice would result from imposition of a sentence within the presumptive range based solely on the claim that the defendant, either singly or in combination, has
>
> > (1) prospects for rehabilitation that are less than extraordinary; or
> >
> > (2) a history free of unprosecuted, undocumented, or undetected sexual offenses.

The superior court ultimately ruled that it did not matter whether Collins could prove either of these two factors. The court reasoned that, given the provisions of the 2013 session law, the three-judge panel no longer had the authority to reduce Collins's sentence even if Collins proved one or both of these factors. The court therefore denied Collins's request for a referral to the three-judge panel.

Collins now appeals the superior court's decision. He argues that, because his crime was committed before the 2013 session law was enacted, the *ex post facto* clauses of the federal constitution and the Alaska constitution prohibit the courts from applying the 2013 session law to him. According to Collins, when the superior court evaluated his request for referral to the three-judge panel, the court was required to apply the law as stated in the *Collins* majority opinion. Likewise, Collins argues that if his case is referred to the three-judge panel, the three-judge panel will be required to apply the law as stated in the *Collins* majority opinion.

To resolve this issue, we must examine and apply the doctrine of "clarifying legislation". This doctrine governs situations where a controversy arises concerning the proper interpretation of a statute and, while the controversy is being litigated in the courts, the legislature enacts new legislation which purports to clarify the intention or meaning of the pre-existing statute.

Under the doctrine of clarifying legislation, there are times when new legislation does not *change* existing law, but instead only clarifies existing law. In these situations, if the courts are convinced that the new enactment was indeed "clarifying" legislation, then the courts will treat the pre-existing statute as if it had always meant what the later enactment declared its meaning to be.

This doctrine has special significance when, as in the present case, the statute at issue is a penal statute. The *ex post facto* clause of the constitution forbids the legislature from enacting or amending a penal statute so as to retroactively criminalize,

or increase the penalty for, acts that have already been committed.[5] But when a new legislative enactment qualifies as "clarifying" legislation, the courts treat the pre-existing version of the statute as having *always* meant what the clarifying enactment declares it to mean. Thus, there has been no change in the law — and no issue of retroactivity when courts apply the now-clarified statute to criminal cases that arose before the legislature enacted the clarifying legislation.

This doctrine of clarifying legislation is central to our resolution of Collins's appeal. As we are about to explain, we conclude that the 2013 session law qualifies as "clarifying" legislation. That is, the 2013 enactment did not change Alaska sentencing law; rather, the 2013 session law clarified the meaning of the pre-existing 2006 sentencing statute.

This means that, despite what was said in the *Collins* majority opinion, the 2006 sentencing statute did not expand the grounds for seeking referral to the three-judge panel. Accordingly, under Alaska sentencing law as it existed in 2008 (when Collins committed his crime), Collins was not entitled to seek referral to the three-judge panel based solely on the two grounds identified in the *Collins* majority opinion.

However, as we also explain, Collins remains entitled to seek a referral to the three-judge panel by asserting that the prescribed presumptive sentencing range is manifestly unjust, given the circumstances of his case. *See* AS 12.55.165–175. We therefore remand Collins's case to the superior court for consideration of this issue.

---

[5] *See, e.g., Collins v. Youngblood*, 497 U.S. 37, 43; 110 S.Ct. 2715, 2719; 111 L.Ed.2d 30 (1990); *State v. Creekpaum*, 753 P.2d 1139, 1142 (Alaska 1988).

*The doctrine of clarifying legislation*

Although the legislature can amend a statute in response to a judicial interpretation of that statute, the doctrine of separation of powers prohibits the legislature from enacting a law that purports to retroactively nullify a judicial interpretation of the statute. [6] This result follows from the principle that the judicial branch of government is the ultimate interpreter of the law. [7]

Nevertheless, when the courts construe a statute, our main goal is to ascertain and implement the intent of the legislature. [8] If courts were strictly prohibited from considering later legislative actions or statements concerning the proper interpretation of a pre-existing statute, this would conflict with the principle that judicial construction of a statute should give effect to legislative intent.

Many American jurisdictions have resolved this tension by adopting the doctrine of "clarifying legislation". Under this doctrine, even though courts are not *bound* by a legislature's later statement of intent concerning a pre-existing statute, courts

---

[6]   *See*, *e.g.*, *McClung v. Employment Development Dept.*, 99 P.3d 1015, 1017–18 (Cal. 2004).

[7]   Norman J. Singer and Shambie Singer, *Sutherland Statutes and Statutory Construction* § 45:3, Vol. 2A, pp. 22–23 (7th ed. 2014); *Bodinson Manufacturing Co. v. California Employment Comm'n*, 109 P.2d 935, 939 (Cal. 1941) ("The ultimate interpretation of a statute is an exercise of the judicial power."); *State v. Murray*, 982 P.2d 1287, 1289 (Ariz. 1999) ("[T]he legislature is vested with plenary power to change the substantive law prospectively, but it may not disturb vested substantive rights by retroactively changing the law that applies to completed events. ... The substantive legal consequence of past events is determined by the law in effect at the time of the event, and the determination of that law is for the courts to decide. ... *A fortiori*, the separation of powers doctrine prevents the legislature from changing the rule of decision in completed cases.").

[8]   *Millman v. State*, 841 P.2d 190, 194 (Alaska App. 1992).

are nevertheless entitled to consider the legislature's later action when courts interpret the pre-existing statute — even in instances where the legislature takes action in response to a recent judicial decision construing the statute in a different way.

The main limitation on this doctrine of clarifying legislation is that the legislature is not permitted to "clarify" the meaning of a statute in a way that conflicts with an interpretation that has already been announced by the jurisdiction's highest court. This limitation stems from the principle that the judicial branch of government is the ultimate arbiter of a statute's meaning. [9]

As the United States Supreme Court explained in *United States v. Stafoff*, [10] a statute that purports to clarify the meaning of an earlier statute "might be of great weight" in assisting a court when the meaning of the earlier statute is "in doubt". [11] But, as a matter of law, a court cannot be "in doubt" about the meaning of the earlier statute when, with regard to the relevant issue, that statute has already been construed by the highest court in the jurisdiction. In such instances, the high court's decision "must

---

[9]    *See, e.g., State v. Murray*, 982 P.2d 1287, 1289 (Ariz. 1999); *McClung v. Employment Development Dept.*, 99 P.3d 1015, 1020 (Cal. 2004); *Western Security Bank v. Superior Court*, 933 P.2d 507, 514 (Cal. 1997); *State v. Aubuchon*, 90 A.3d 914, 921 (Vt. 2014); *Overton v. Washington State Economic Assistance Authority*, 637 P.2d 652, 656 (Wash. 1981); *Middleton v. City of Chicago*, 578 F.3d 655, 662 (7th Cir. 2009); *cf. People v. Cuevas*, 168 Cal.Rptr. 519, 524 (Cal. App. 1980) ("[A] legislative clarification in [an] amend[ing] statute may not be used to overrule [the] exercise of the judicial function of statutory construction and interpretation.").

[10]    260 U.S. 477, 43 S.Ct. 197, 67 L.Ed. 358 (1923).

[11]    *Stafoff*, 260 U.S. at 480, 43 S.Ct. at 199.

stand for the law" as it existed prior to the enactment of the purported clarifying legislation. [12]

Two decisions of the California Supreme Court—*McClung v. Employment Development Department*, 99 P.3d 1015 (Cal. 2004), and *Western Security Bank v. Superior Court*, 933 P.2d 507 (Cal. 1997) — illustrate the application of this doctrine.

In *Western Security Bank*, the California legislature had enacted a statute declaring its intent to "confirm and clarify the law" and to "abrogate the holding" of a California Court of Appeal decision issued in a previous year. [13] After analyzing the wording and legislative history of the new statute, the California Supreme Court held that this statute clarified, rather than changed, the existing law. [14] As the California Supreme Court later explained in *McClung*, "if the courts have not yet finally and conclusively interpreted a statute and are in the process of doing so, a declaration of a later Legislature as to what an earlier Legislature intended is entitled to consideration" [15] — although a "legislative declaration of an existing statute's meaning is neither binding nor conclusive in construing the statute." [16]

In contrast, the California Supreme Court held in *McClung* that a legislative amendment could *not* be considered a "clarification", because the legislative amendment purported to overturn a final decision of the supreme court. Because the supreme court

---

[12]   *Ibid.*

[13]   *Western Security Bank*, 933 P.2d at 513.

[14]   *Id.* at 520.

[15]   *McClung*, 99 P.3d at 1019–1020 (citing *Western Security Bank*, 933 P.2d at 514).

[16]   *Western Security Bank*, 933 P.2d at 514.

had already "finally and definitively interpreted" the pre-existing statute, the legislature no longer had the power to "clarify" that statute. [17]

We turn, then, to situations where the doctrine of clarifying legislation potentially applies — situations where a jurisdiction's highest court has not yet issued a controlling interpretation of the pre-existing statute.

Under the doctrine of clarifying legislation, courts must begin with the presumption that any new legislation represents a *change* to pre-existing law, not merely a clarification of pre-existing law. [18]

If it is contended that new legislation represents a clarification of pre-existing law rather than a change to that law, a court must examine the wording and legislative history of the new enactment, as well as the context in which the legislature acted. Thus, a court should consider such things as the title and contents of the new enactment, the length of time between the original statute and the new enactment, whether the legislature acted in response to a recent controversy concerning the meaning of the pre-existing law, and whether the legislature's new enactment is consistent with a reasonable interpretation of the pre-existing statute. [19]

However, even when the legislature expressly declares that it is acting to clarify an ambiguity or to correct a misunderstanding of a pre-existing statute, the legislature's declaration is not binding on the courts. Rather, the legislature's action is

---

[17] *McClung*, 99 P.3d at 1020.

[18] *See*, *e.g.*, *State v. Fell*, 97 P.3d 902, 906 (Ariz. App. 2004), *affirmed*, 115 P.3d 594 (Ariz. 2005); *People v. Lewis*, 183 Cal.Rptr.3d 701, 705–06 (Cal. App. 2015); *Indiana Dept. of Revenue v. Kitchin Hospitality LLC*, 907 N.E.2d 997, 1002 (Ind. 2009); *State v. Dean*, 357 N.W.2d 307, 309 (Iowa 1984); *Johnson v. Morris*, 557 P.2d 1299, 1303 (Wash. 1976).

[19] *See*, *e.g.*, *Macchione v. State*, 123 So.3d 114, 116–17 (Fla. App. 2013); *People v. Jackson*, 955 N.E.2d 1164, 1170–71 (Ill. 2011).

only a factor that the courts should consider when determining the meaning and effect of the pre-existing statute. [20] And if a court believes that the meaning of the pre-existing statute is plain or unmistakable, any legislative attempt to "clarify" that statute (to make it mean something else) will be deemed a change in the law, not a clarification. [21]

*Prior application of this doctrine under Alaska law*

The Alaska Supreme Court has recognized and applied the "clarifying legislation" doctrine in a series of cases dating back to 1981.

Our supreme court first addressed this doctrine in *Anchorage v. Sisters of Providence in Washington, Inc.*, 628 P.2d 22 (Alaska 1981), a case which required the supreme court to construe the statutes which directed the state government to provide funds to local governments to help support health care facilities. Under these statutes, the level of state funding was based on the number of hospital beds in the various health care facilities within each local government's jurisdiction.

The specific dispute in *Sisters of Providence* was whether the state statutes allowed local governments to distribute the state funds to whichever local health care facilities they wished to, or whether local governments were required to distribute the funds to the various health care facilities in proportion to the amount of funding that was attributable to that particular health care facility. [22]

---

[20]  *See*, *e.g.*, *Stockton Savings & Loan Bank v. Massanet*, 114 P.2d 592, 595 (Cal. 1941); *People v. Cuevas*, 168 Cal.Rptr. 519, 524 (Cal. App. 1980).

[21]  *Heckler v. Turner*, 470 U.S. 184, 210–11; 105 S.Ct. 1138, 1152–53; 84 L.Ed.2d 138 (1985).

[22]  *Sisters of Providence*, 628 P.2d at 24.

The litigation over the meaning of the state statutes began in the Anchorage superior court — and, in response to the superior court's decision, the legislature amended the law that specified how the state funds could be spent. [23] This amended version of the statute clearly specified that local governments were required to distribute the state funds to each health care facility in accordance with the revenues which were attributable to that particular facility.

The new version of the statute clearly governed all *future* distribution of the state funds, but the question before the supreme court was how these funds were supposed to have been distributed under the previous version of the statute.

Obviously, one might argue that the legislature's recent action demonstrated that the earlier version of the statute must have meant something different — while, on the other hand, one might argue that the legislature's recent action was intended to clarify what the statute had always meant. And the supreme court noted that there was judicial authority to support either of these presumptions. [24]

However, the supreme court concluded that the most persuasive factor in the *Sisters of Providence* litigation was the fact that the Alaska legislature had acted in response to an ongoing dispute about the meaning of the pre-existing version of the law:

> There is yet another body of modern authority that takes [the fact of a] dispute or ambiguity surrounding a statute to be a strong indication that subsequent amendment was intended to clarify, rather than change, existing law. 2A C. Sands, *Sutherland Statutory Construction*, § 49.11, at 265-66 (4th ed. 1973). *See Bowen v. Statewide City Employees Retirement System*, 72 Wash.2d 397, 433 P.2d 150, 153-54 (1967). We think this approach is the preferable

---

[23]  *Id.*, 628 P.2d at 25–27.

[24]  *Id.*, 628 P.2d at 28.

one[,] in that it encourages realistic appraisal of the circumstances surrounding the amendment of a statute rather than mechanical adherence to one or the other of the above rules of statutory construction.

*Sisters of Providence*, 628 P.2d at 28.

Although the supreme court emphasized that it was not legally bound by any declaration the legislature might have made about the purpose of the new enactment, the court declared that, given the circumstances surrounding the legislature's action, a "realistic appraisal" of the legislature's action led to the conclusion that the amendment of the funding statute should be deemed a clarification of pre-existing law rather than a change in the law. *Sisters of Providence*, 628 P.2d at 28.

The supreme court followed the same approach in *Matanuska-Susitna Borough v. Hammond*, 726 P.2d 166 (Alaska 1986), where the court reviewed the statutes that dealt with state revenue sharing payments and tax limitations based on population.

Four local governments sought a judicial interpretation of the term "population" used in these statutes. While this litigation was pending, and after a superior court judge had affirmed the reasonableness of the population calculations that the Department of Community and Regional Affairs had used, the Alaska legislature amended the pertinent statute — but the legislature made no change to the language delegating population calculations to the Department of Community and Regional Affairs, nor did the legislature enact any further definition of the term "population".

On appeal, the supreme court affirmed the superior court's decision and upheld the Department's population calculations. In reaching this decision, the supreme court relied on the legislature's failure to amend the term "population" when the legislature revisited the pertinent statute during the pendency of the litigation. The

supreme court interpreted the legislature's failure to amend this portion of the statute as an implicit legislative endorsement of the pre-existing statutory language — and, more particularly, an endorsement of the superior court's ruling that the Department had reasonably interpreted the term "population". *Matanuska-Susitna Borough v. Hammond*, 726 P.2d at 176 & n. 21.

In subsequent cases, the Alaska Supreme Court has continued to apply the doctrine of clarifying legislation, albeit with certain limitations. The supreme court has declared that this doctrine cannot be used to alter the meaning of a pre-existing statute which was *not* ambiguous regarding the issue being litigated. *See*, *e.g.*, *Hillman v. Nationwide Mutual Fire Insurance Co.*, 758 P.2d 1248, 1252 (Alaska 1988).

And the supreme court has repeatedly declared that little weight, if any, should be given to the legislature's *statements* that it acted to "clarify" the intent of a previous legislature. Thus, for example, in *Hageland Aviation Services, Inc. v. Harms*, 210 P.3d 444 (Alaska 2009), the legislative history of a newly-enacted session law contained statements indicating that the legislature viewed the new enactment as merely clarifying pre-existing law. But after the supreme court examined the language of the pre-existing law, its history, and the way in which the pre-existing law had been interpreted by the Alaska Department of Labor, the supreme court concluded that, despite the legislature's statements to the contrary, the new session law had in fact changed the law. *Id.*, 210 P.3d at 448 n. 12.

*See also Hillman*, 758 P.2d at 1252; *Flisock v. Division of Retirement and Benefits*, 818 P.2d 640, 645 (Alaska 1991); *Department of Revenue v. OSG Bulk Ships, Inc.*, 961 P.2d 399, 406 & n. 13 (Alaska 1998).

But with these limitations, the supreme court has repeatedly applied the doctrine of clarifying legislation in situations where the legislature acts in response to a

recently-arisen controversy concerning the meaning of a statute (and especially where the legislature takes action while this controversy is still being litigated).

The most recent example is the supreme court's decision in *Angelica C. v. Jonathan C.*, 459 P.3d 1148 (Alaska 2020).

The issue presented in *Angelica C.* was whether the superior court possessed the statutory authority to terminate parental rights in a child custody proceeding. During the trial court litigation in *Angelica C.*, the judge ruled that he did not possess this authority, and the legislature soon amended the statute in response to the judge's ruling — adding language that explicitly granted this authority to the superior court. [25] According to the sponsor of this amendment, the new version of the statute did not establish any new rule, but rather was intended "to simply make existing policy abundantly clear." [26]

The supreme court acknowledged the sponsor's explanation of the purpose behind the new version of the statute, but the supreme court then pointed to what it had said in *Hillman*:

> [The sponsor's] comments notwithstanding, we have said that asking ... "whether a legislature which has amended a statute intends to change or merely clarify the statute is usually fruitless" because the legislature's opinion as to the meaning of a statute passed by an earlier legislature is no more persuasive than that of a knowledgeable commentator.

*Angelica C.*, 459 P.3d at 1157. [27]

---

[25]  *Angelica C.*, 459 P.3d at 1155–57.

[26]  *Id.* at 1157.

[27]  Quoting *Hillman v. Nationwide Mutual Fire Insurance Co.*, 758 P.2d 1248, 1252
(continued...)

Thus, the supreme court explained, it was not bound by any legislative declaration of purpose. Rather, "[courts] independently decide whether the recent amendments change the effect of [the statute] or merely clarify its meaning."[28]

The supreme court next examined the history that led up to the legislature's enactment of the new version of the statute, and analyzed the wording and structure of the new version in comparison to the older version. Based on these factors, the supreme court concluded that the legislature's recent action had not changed the law; rather, "the effect of the 2018 amendments was to clarify the [pre-existing] statute." *Ibid.*

The supreme court's decision in *Angelica C.* is the most recent example of the doctrine of clarifying legislation as we have described it here. The law presumes that any new statute constitutes a change in the law rather than a clarification of pre-existing law, but this presumption can be rebutted by the wording and legislative history of the new statute, by the context in which the legislature acted, and by whether the wording of the new statute is consistent with a reasonable interpretation of the pre-existing statute.

Because the Alaska Supreme Court has adopted the doctrine of clarifying legislation, we will apply that doctrine to Collins's case.

---

[27] (...continued)
(Alaska 1988), as construed in *Hageland Aviation Services, Inc. v. Harms*, 210 P.3d 444, 448 n. 12 (Alaska 2009).

[28] *Angelica C.*, 459 P.3d at 1158.

*Why we conclude that the 2013 session law clarified Alaska's pre-existing sentencing law rather than changed it*

As we have explained, our analysis under the doctrine of clarifying legislation begins with the presumption that any new legislation represents a change in the law. The question in Collins's case is whether that presumption is rebutted by the wording and legislative history of the 2013 session law, as well as the circumstances that prompted the legislature to act.

Here, the legislature enacted the 2013 session law in quick response to this Court's decision in *Collins*. In that 2013 session law, the legislature declared that its purpose was (1) to clarify the intent of the pre-existing sentencing statute, (2) to disavow the interpretation of the law adopted by the *Collins* majority, and (3) to endorse the interpretation advocated in Judge Bolger's dissent. Finally, the legislature acted while this issue of statutory interpretation was still pending in front of the supreme court—*i.e.*, still unresolved by the highest judicial authority in Alaska.

The legislature's statement of purpose is not binding on this Court. Nevertheless, given the fact that there was reasonable debate regarding the proper interpretation of the pre-existing law (as demonstrated by this Court's two-to-one decision in *Collins*), and given the circumstances surrounding the Alaska legislature's enactment of the 2013 session law, we conclude that this session law represents a clarification of Alaska's pre-existing sentencing law rather than a change to that law. Thus, we must treat the 2006 sentencing statute as if it had always embodied the legislature's later clarification. [29]

---

[29] *Western Security Bank*, 933 P.2d at 510, 514 ("Such a legislative act has no retrospective effect because the true meaning of the statute remains the same."); *State v. Aubuchon*, 90 A.3d 914, 921 (Vt. 2014) ("[W]hen the Legislature enacts a clarifying
(continued...)

Because the 2013 session law was a clarification of Alaska's sentencing law rather than a modification of it, the *ex post facto* clauses of the federal and state constitutions do not bar the courts from applying the law stated in the 2013 session law to cases that arose before the legislature acted — including Collins's own case, which provided the impetus for the legislature's clarifying enactment. [30]

We therefore hold that Collins and other similarly situated offenders are not entitled to seek referral of their cases to the three-judge sentencing panel solely on the two grounds announced in the *Collins* majority opinion.

We acknowledge that our conclusion is seemingly at odds with a short passage from this Court's decision in *State v. Seigle*, 394 P.3d 627 (Alaska App. 2017).

The defendant in *Seigle* was sentenced by the three-judge sentencing panel in mid-November 2012, two weeks after this Court issued our decision in *Collins*, [31] and the three-judge panel relied in part on the *Collins* decision when it sentenced Seigle to a term of imprisonment below the applicable presumptive sentencing range. [32] The State appealed Seigle's sentence, contending that the three-judge panel acted illegally when it relied on *Collins*.

---

[29] (...continued)
amendment, the true meaning of the earlier version of the statute remains the same.").

[30] *See Greenwich Hospital v. Gavin*, 829 A.2d 810, 815–16 (Conn. 2003) ("Implicit in [this Court's] decisions allowing the legislature to clarify its intent in prior legislation [is] the recognition that pending cases, even those that eventually spawned the clarifying legislation, could be affected [by the legislature's action]." Thus, "clarifying statutes can apply to cases pending at the time of their effective dates, even those [cases] which provided the impetus for the clarifying legislation in the first instance.").

[31] *Seigle*, 394 P.3d at 631.

[32] *Id.* at 630.

More specifically, the State argued that under Alaska Appellate Rules 507 and 512, no decision of this Court takes legal effect until the parties have had a chance to petition the Alaska Supreme Court to review and reverse it.[33] The State did indeed petition the supreme court to review our decision in *Collins*, and the State's petition was pending when the three-judge panel sentenced Seigle in mid-November 2012.[34] Thus, according to the State, the *Collins* decision had not taken legal effect when the three-judge panel sentenced Seigle, and therefore the three-judge panel acted illegally when it relied on *Collins*. The State contended that, because its petition for hearing in *Collins* was still pending before the supreme court at the time of Seigle's sentencing, the three-judge panel was required to abide by the pre-*Collins* interpretation of the pertinent sentencing statutes.[35]

In our *Seigle* decision, this Court explained at some length why the State's interpretation of Appellate Rules 507 and 512 was incorrect — why published decisions of this Court become legal precedent as soon as they are issued, and remain legal precedent unless they are affirmatively reversed or vacated by the supreme court.[36] Then, in a short concluding paragraph, we applied this legal conclusion to the facts of Seigle's case:

> Returning to Seigle's case, the supreme court never overruled this Court's decision in *Collins*, so it was binding precedent on the lower courts until the legislature amended the sentencing statutes, effective July 1, 2013. Thus, when the three-judge panel sentenced Seigle in November 2012

---

[33] *Id.* at 632.

[34] *Id.* at 631.

[35] *Id.* at 632.

[36] *Id.* at 632–34.

[two weeks after *Collins* was decided], *Collins* was good law and it was not error for the panel to rely on *Collins*.

*Seigle*, 394 P.3d at 634–35.

Because this paragraph speaks of the legislature's having "amended" the sentencing statutes in 2013, it might be read as suggesting that this Court interpreted the 2013 session law as having affirmatively changed Alaska's sentencing law, as opposed to having clarified it. But that was not the issue this Court was addressing. Rather, we were explaining why we rejected the State's proposed interpretation of Appellate Rules 507 and 512, and this paragraph was the short concluding portion of that explanation.

To the extent that our decision in *Seigle* may have inferentially turned on the distinction between "amending" legislation and "clarifying" legislation, and even though this paragraph from *Seigle* refers to the 2013 session law as having "amended" the sentencing statutes, we now explicitly hold that the 2013 session law did not change those sentencing statutes, but rather clarified them.

*Why we remand Collins's case to the superior court so that the superior court can assess whether, given the totality of the circumstances in Collins's case, the applicable presumptive sentencing range would be manifestly unjust*

Although Collins cannot seek a referral to the three-judge sentencing panel based solely on the two factors described in the *Collins* majority opinion, he is nevertheless entitled to seek a referral to the three-judge panel based on the ground that his prescribed presumptive sentencing range would be manifestly unjust under the circumstances of his case. And in making this claim that the totality of the circumstances

calls for a lesser sentence, Collins can rely on arguments (1) that he has committed no prior sexual offenses, and (2) that he has good prospects for rehabilitation.

We explained this aspect of Alaska sentencing law in *State v. Seigle*, 394 P.3d 627, 635–38 (Alaska App. 2017). As we noted in *Seigle*, this Court's decision in *Collins* did not alter the analysis that a sentencing judge is required to conduct when a defendant seeks referral to the three-judge panel on the ground that a sentence within the applicable presumptive range would be manifestly unjust. In such cases, the sentencing judge is required to employ the *Chaney* criteria[37] to assess the totality of the circumstances of the defendant's case, and to then determine whether all sentences within the applicable presumptive range would be "obviously unfair". *Seigle*, 394 P.3d at 635.

In making this assessment, the court must evaluate the facts of the defendant's current criminal episode, plus the defendant's history and underlying circumstances. Because of this (as we explained in *Seigle*), the court's assessment "will often include circumstances that, standing alone, would be [legally] insufficient to warrant a departure from the applicable presumptive sentencing range":

> For example, a sentencing judge might reject a defendant's assertion of "extraordinary potential for rehabilitation," but if the defendant has favorable prospects for rehabilitation, the judge would still consider those favorable prospects as part of the totality of the circumstances when determining whether a sentence within the presumptive range would be manifestly unjust under the *Chaney* criteria. Similarly, there may be situations where a sentencing judge is legislatively precluded (because of the existence of certain aggravating factors) from sending the defendant's case to the

---

[37] *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), and AS 12.55.005 (codifying the *Chaney* sentencing criteria).

three-judge sentencing panel on the basis of extraordinary potential for rehabilitation. Nevertheless, if the defendant asserts that any sentence within the applicable presumptive range would be manifestly unjust as applied to him, the sentencing judge would still be required to consider the defendant's potential for rehabilitation as part of the totality of the circumstances under the *Chaney* criteria in deciding whether "manifest injustice" would result from a sentence within the presumptive range in that case.

*Seigle*, 394 P.3d at 635. See also our discussion of this same issue in *Duncan v. State*, 782 P.2d 301, 304 (Alaska App. 1989).

Thus, even though the superior court correctly ruled that the three-judge panel was barred from granting relief to Collins based *solely* on the two factors identified in *Collins*, this ruling did not constitute a complete resolution of Collins's request to have his case referred to the three-judge panel. Collins could still seek a referral to the three-judge panel on the theory that a sentence within the applicable presumptive range would be manifestly unjust, given the totality of the facts of his case.

We note that, at the time the superior court denied Collins's request for a referral to the three-judge panel, this Court had not yet issued our decision in *Seigle*. Thus, the superior court did not have the benefit of our decision in *Seigle* when it denied Collins's request for referral to the three-judge panel.

For this reason, we conclude that we must remand Collins's case to the superior court, so that the superior court can renew its consideration of whether the prescribed presumptive sentencing range would be manifestly unjust under the facts of Collins's case.

In its supplemental brief to this Court, the State argues that it would be improper for us to remand Collins's case to the superior court for this purpose — because, according to the State, the transcript of Collins's sentencing hearing shows that

– 22 – 2704

Collins's attorney affirmatively waived any argument that Collins's case should be referred to the three-judge sentencing panel on the ground that the applicable presumptive sentencing range was manifestly unjust.

The transcript of the sentencing proceeding does, indeed, support the State's contention that Collins's attorney waived any "manifest injustice" argument. Here is the pertinent exchange between Collins's attorney and the sentencing judge, as transcribed:

> *The Court*: It strikes me that [the] kind of thing [you are arguing] would go more to the "manifest injustice" standard than the "exceptional potential for rehabilitation" [standard].
>
> *Defense Attorney*: Well, let me just check. Did I also include manifest injustice in my brief?
>
> *The Court*: I thought you had ...
>
> *Defense Attorney*: I thought I had.
>
> *The Court*: ... and that's why I wanted to be clear, because ...
>
> *Defense Attorney*: Okay. I don't — I hadn't really thought of that.
>
> *The Court*: I'll double check that if you like, but ...
>
> *Defense Attorney*: Oh, yes.
>
> *The Court*: Yeah. It's in both; that's why I ...
>
> *Defense Attorney*: It's in both. Yes.

> *The Court*:  ... was sounding a little perplexed, frankly.
>
> *Defense Attorney*:  Yes.  Let me go back there and say that we want to withdraw the manifest injustice.

However, after this exchange in which the defense attorney apparently withdrew his "manifest injustice" challenge to the sentence, the transcript shows that the sentencing hearing proceeded as if Collins's attorney had never withdrawn this claim. The prosecutor continued to argue against Collins's "manifest injustice" claim, the sentencing judge continued to speak about this claim as an active issue, and, at the end of the hearing, the sentencing judge issued a ruling on Collins's "manifest injustice" claim.

Because of this incongruity in the transcript, this Court ordered a copy of the original audio recording of the sentencing hearing held on November 19, 2009 — and this audio recording reveals that the transcript is grossly mistaken.

At the point where the transcript has the defense attorney saying, "Yes.  Let me go back there and say that we want to withdraw the manifest injustice.", the audio recording shows that the defense attorney said exactly the opposite.  The attorney's actual words were:

> *Defense Attorney*:  Yes.  Let me, let me back up, there, and say we're not — we will not withdraw the manifest injustice.

In sum, Collins's attorney did not waive the argument that Collins's case should be referred to the three-judge panel on the ground that the prescribed presumptive sentencing range would be manifestly unjust.

We therefore remand Collins's case to the superior court so that the superior court can renew its consideration of this issue.

*Conclusion*

We hold that the provisions of SLA 2013, chapter 43 did not alter Alaska sentencing law, but instead clarified it. This being so, application of this clarified law to Collins (and to any other similarly situated offenders) does not violate the *ex post facto* clause of either the federal constitution or the Alaska constitution. Thus, the superior court correctly ruled that Collins could not seek a referral to the three-judge sentencing panel based solely on the factors identified by this Court in *Collins*.

However, Collins is still able to seek a referral to the three-judge panel based on a claim that, given the totality of the circumstances of his case, the prescribed presumptive sentencing range is manifestly unjust when applied to him. We therefore remand Collins's case to the superior court for consideration of this question.

We do not retain jurisdiction of this appeal.

2704