NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific Reporter.* *Readers are encouraged to bring typographical or other* *formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

MICHAEL JEROME MOSQUITO,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-13179
Trial Court No. 3AN-17-06446 CI

O P I N I O N

No. 2717 — January 7, 2022

Appeal from the Superior Court, Third Judicial District, Anchorage, Erin B. Marston, Judge.

Appearances: Rachel Cella, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Appellant. Matthias R. Cicotte, Assistant Attorney General, Department of Law, Anchorage, and Kevin G. Clarkson, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Terrell, Judges.

Judge TERRELL.

In 2016, the legislature enacted AS 33.16.270.[1] Under the original version of the statute, a parolee's period of supervision was reduced by 30 days for each 30-day

---

[1] SLA 2016, ch. 36, § 151.

period during which the parolee complied with the conditions of parole.[2] The legislature provided that AS 33.16.270 "appl[ies] to parole granted before, on, or after [January 1, 2017]."[3] This language makes clear that a parolee is entitled to a 30-day reduction to their period of supervision (an "earned compliance credit") if they complied with their conditions of parole for a 30-day period after January 1, 2017, even if they were originally placed on parole before that date.

But Mosquito argues that parolees must also receive credit for periods of parole compliance that occurred prior to January 1, 2017. In other words, he argues that AS 33.16.270 applies retroactively not only, as the statute explicitly provides, to *terms of parole* granted before the effective date, but also to *periods of compliance* that occurred prior to the statute's effective date.

The question presented by this appeal is whether AS 33.16.270 applies to periods of compliance on parole supervision prior to its effective date, or only to periods of compliance on or after the effective date. For the reasons explained in this opinion, we conclude that a parolee is only entitled to earned-compliance credits for periods of compliance on or after AS 33.16.270's effective date of January 1, 2017.

*Why we decide this case under the public-interest exception to the mootness doctrine*

The parties agree that this appeal is moot because Mosquito has now served all of the incarceration and parole time associated with the criminal conviction at issue

---

[2] *See* former AS 33.16.270(1) (2018). The statute has since been amended to lower the award to 10 days of reduction of the parole supervision period for every 30 days of compliance with parole conditions. *See* FSSLA 2019, ch. 4, § 116.

[3] SLA 2016, ch. 36, §§ 185(p)(10) & 190.

in this case. But Mosquito asks us to decide his appeal on its merits under the public-interest exception to the mootness doctrine.

Courts look at three main factors in deciding whether to apply the public-interest exception to the mootness doctrine: "(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine."[4]

With respect to the first two factors, this issue has already come before this Court in multiple cases, and each time we have found the issue to be moot and declined to reach the merits. We therefore think it clear that the issue is capable of repetition, and that routine application of the mootness doctrine has caused review of the issue to be repeatedly circumvented.[5]

We also conclude that the retroactivity of the parole earned-compliance credits provision is important to the public interest. There are a large number of persons on parole, and if they are awarded credit against their parole supervision period for time spent in compliance with parole conditions prior to AS 33.16.270's effective date, then many of them would receive sufficient credits to terminate parole supervision.

Accordingly, we conclude that the public-interest exception to the mootness doctrine is satisfied and that review on the merits is appropriate in this case.

---

[4] *Fairbanks Fire Fighters Ass'n, Local 1324 v. Fairbanks*, 48 P.3d 1165, 1168 (Alaska 2002) (quoting *Kodiak Seafood Processors Ass'n v. State*, 900 P.2d 1191, 1196 (Alaska 1995)).

[5] *See, e.g.*, *Morris v. State*, Court of Appeals File No. A-13011 (Order dated Jan. 14, 2020).

*Why we conclude that the parole earned-compliance credits statute only applies to time spent on parole after the statute's effective date*

This case presents a question of statutory interpretation. "When we interpret a statute, our task is 'to ascertain the legislature's intent and then to construe the statute so as to implement that intent.'"[6] We interpret statutes "according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose."[7] We use "a sliding scale approach to statutory interpretation, in which 'the plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be.'"[8] Additionally, AS 01.10.090 states that "[n]o statute is retrospective unless expressly declared therein."

Alaska Statute 33.16.270, as originally enacted, allowed a parolee to receive a 30-day reduction in their period of parole supervision for each 30-day period during which they complied with their conditions of parole. The statute was enacted as part of Senate Bill 91, a large-scale revision of Alaska's criminal statutes. Senate Bill 91 also enacted a virtually identical earned-compliance credits statute for probationers, AS 33.05.020(h).[9]

---

[6] *R.C. v. State*, 435 P.3d 1022, 1026-27 (Alaska App. 2018) (quoting *Williams v. State*, 2015 WL 4599554, at *3 (Alaska App. July 29, 2015) (unpublished)).

[7] *State v. Fyfe*, 370 P.3d 1092, 1095 (Alaska 2016) (quoting *State, Div. of Workers' Comp. v. Titan Enters., LLC*, 338 P.3d 316, 320 (Alaska 2014)). We independently determine whether a statute is retroactive. *Eastwind, Inc. v. State*, 951 P.2d 844, 847 n.8 (Alaska 1997).

[8] *Adamson v. Anchorage*, 333 P.3d 5, 11 (Alaska 2014) (quoting *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013)).

[9] SLA 2016, ch. 36, § 114. Like the parole earned-compliance credits statute, AS 33.05.020(h) was amended in 2019 to reduce the award of credits down to 10 days for every 30 days spent in compliance with probation conditions. FSSLA 2019, ch. 4, § 100.

These earned-compliance credits statutes result in a substantial reduction of the parole or probation supervision period for those who comply with their supervision conditions. They have their origin in the work of the Alaska Criminal Justice Commission. The Commission issued a report in 2015, recommending that Alaska enact statutes "establishing an earned compliance policy that grants probationers and parolees one month credit towards their probation and/or parole term for each month they are in compliance with the conditions of supervision."[10] The report also noted that:

> Historically, probation and parole supervision was focused on surveillance and sanctioning in order to catch or interrupt negative behavior. However, research shows that encouraging positive behavior with incentives and rewards can have an even greater effect on motivating and sustaining behavior change.
>
> While incarcerated offenders in Alaska have the opportunity to receive good time and furlough incentives in acknowledgment of positive behavior and program participation, the state provides no similar incentives for offenders under supervision. Alaska has no earned discharge policy to allow supervisees to earn time off their supervision sentence for good behavior.[11]

Turning to the provision at issue in this appeal, the applicability clause for AS 33.16.270 provides that the parole earned-compliance credits program "appl[ies] to parole granted before, on, or after [January 1, 2017]."[12] This language makes clear that a parolee is entitled to a 30-day reduction in their period of supervision if they complied with their conditions of parole for a 30-day period after January 1, 2017, even if they

---

[10] Alaska Criminal Justice Commission, *Justice Reinvestment Report*, at 24 (Dec. 2015).

[11] *Id.* at 12.

[12] SLA 2016, ch. 36, §§ 185(p)(10) & 190.

were originally placed on parole prior to that date. But it is ambiguous as to whether a parolee receives credit for periods of compliance prior to January 1, 2017.

On appeal, however, Mosquito argues that this language is not ambiguous. He argues that the plain language of "before, on, or after" makes it clear that the legislature intended the statute to apply retroactively, and that the State bears a "heavy burden" to show that the statute is only prospective.

The problem with this argument is that a statute can be retroactive in one sense but not in another. Here, the legislature specified that the parole statute "appl[ies] to parole granted before, on, or after" the effective date. This makes it clear that the legislature intended the statute to apply retroactively in the sense that it applies to people who were *granted parole* before the effective date. But the question presented in this appeal is different: whether the legislature intended the statute to apply retroactively in the sense that it applies to *periods of compliance* that occurred before the effective date. As to this question, the plain language of the statute is silent. We must therefore turn to the legislative history and the purpose of the statute.

In early drafts of Senate Bill 91, both the probation and parole earned-compliance credits statutes applied to individuals placed on probation or parole "on or after" the effective date of the statute.[13] But this language meant that existing parolees and probationers would not be covered by the earned-compliance credits program. The drafters reworked the applicability clauses to avoid this result. Specifically, Senator Anna MacKinnon introduced an amended applicability clause for the probation earned-

---

[13] Sponsor Substitute for Senate Bill (S.S.S.B.) 91, § 139(h)(8), (j)(20), 29th Leg., 2d Sess. (Feb. 3, 2016); Committee Substitute for Sponsor Substitute for Senate Bill (C.S.S.S.S.B.) 91, § 143(h)(8), (j)(12), 29th Leg., 2d Sess. (S. St. Aff. Comm., Mar. 9, 2016); C.S.S.S.S.B. 91, § 163(j)(6), (*l*)(26), 29th Leg., 2d Sess. (S. Judiciary Comm., Mar. 25, 2016).

compliance credits provision, AS 33.05.020(h), which said that it applies "to sentences imposed before, on, or after the effective date . . . for time served on probation on or after the effective date" of the provision.[14] An aide to Senate Bill 91's chief sponsor, Senator John Coghill, explained that Senator MacKinnon's amendment meant that both earned-compliance credits provisions would "apply to those individuals who were on probation *or parole* at the time of passage of the bill."[15] The senate subsequently approved the passage of this amendment with regard to the probation earned-compliance credit statute.

As Mosquito notes, however, the legislature never amended Senator MacKinnon's applicability clause for probation earned-compliance credits to include parole earned-compliance credits, and never adopted an identical applicability clause specific to parole earned-compliance credits. Instead, the legislature changed the applicability clause for the parole earned-compliance credits program so that it applied to individuals placed on parole "before, on, or after" the effective date. Mosquito argues that this history demonstrates an intent to break with the original plan that the parole and probation earned-compliance credits provisions have the same temporal reach.

As we noted earlier, the applicability clause for the parole earned-compliance credits program is facially ambiguous as to whether the statute applies to time spent in compliance with parole conditions prior to the statute's effective date.[16]

---

[14]   Minutes of the Senate Fin. Comm., Senate Bill 91, at 2:21:21 p.m. (Apr. 2, 2016).

[15]   *Id.*, Testimony of Jordan Schilling, Staff to Sen. John Coghill (emphasis added).

[16]   Notably, the applicability clause for the parole earned-compliance credits program included two other statutes that clearly regulated conduct occurring after the statutes' effective date — (1) AS 33.16.180, regarding duties of DOC's commissioner with respect to the newly created administrative parole scheme, and (2) AS 33.16.215, involving a new system of graduated sanctions for technical parole violations. This further suggests that the phrase "parole granted before, on, or after" the statutes' effective date was intended to

(continued...)

And the provision governing the identical probation program shows that the legislature understood how to write an applicability clause that clearly applied to persons placed on probation before the effective date, but only for periods of compliance that occurred after the effective date. Indeed, the existence of the unambiguous applicability clause governing the probation program is the strongest evidence that the legislature must have intended something different when it enacted the ambiguous applicability clause governing the parole program.

But nothing else in the legislative history supports that conclusion. Mosquito has cited to no evidence that the drafters discussed, let alone approved, granting earned-compliance credits for past conduct, and our own independent review of the legislative history discloses no such discussion. Instead, the focus of discussion was on whether the incentive program should apply only to individuals granted parole on or after the effective date, or whether it should also apply to individuals granted parole before the effective date. Under these circumstances, the ambiguous applicability clause governing the parole earned-compliance credits program appears more the product of inartful drafting than a specific intent to treat the probation and parole programs differently.

Subsequent developments support this conclusion. In Senate Bill 55, passed only one year after Senate Bill 91, the legislature enacted a provision stating: "Nothing in the provisions of AS 33.16.270 may be construed as applying to credit for time served on parole before January 1, 2017."[17] Such "clarifying legislation" is not binding on the courts, but it is "a factor that the courts should consider when determining

---

[16] (...continued)
include a person on parole before the statutes' effective date, while applying only to time spent on parole after the effective date.

[17] SLA 2017, ch. 13, § 30.

the meaning and effect of the pre-existing statute."[18] Here, the legislature's clarification supports the conclusion that the legislature did not intend for parolees to receive earned-compliance credits for time served on parole prior to January 1, 2017.

Policy concerns also weigh against Mosquito's proffered interpretation. The earned-compliance credits program was designed to incentivize good behavior. Because parolees in the past cannot have been expected to change their behavior in response to a program that did not yet exist, the policy goal of incentivizing good behavior would not be served by granting earned-compliance credits for time served on parole prior to January 1, 2017.

Mosquito contends that the purpose of the statute was to reduce the caseloads of parole officers and to save the state money, and he asserts that his proposed interpretation would further those goals. But we do not pursue the policy goals of the legislature by whatever means necessary; rather, we attempt to implement those goals through the framework designed and adopted by the legislature.

Here, the legislature designed an earned-compliance credits program to incentivize compliance with parole conditions. Mosquito's interpretation would serve the overarching policy goals of that program by reducing caseloads and saving the state money, but it would do so through a mechanism of judicial invention rather than the forward-looking incentive system envisioned by the legislature.

Furthermore, it would be difficult to award earned-compliance credits for past compliance, because parole officers are unlikely to have kept records designed to implement a program that did not yet exist. Even if some parole officers kept sufficiently detailed records, it is highly unlikely that *all* of them did, which would mean that a parolee's entitlement to earned-compliance credits would turn on the idiosyncracies of

---

[18] *Collins v. State*, 494 P.3d 60, 67 (Alaska App. 2021).

their parole officer's record-keeping process, rather than their own good behavior. We doubt the legislature intended to enact such an arbitrary program.[19]

*Conclusion*

For the reasons explained in this opinion, we hold that the parole earned-compliance credits program only applies to time spent on parole after AS 33.16.270's effective date of January 1, 2017. The superior court's grant of summary judgment to the State correctly rejected Mosquito's request for retroactive application of the parole earned-compliance credits statute. Accordingly, the decision of the superior court is AFFIRMED.

---

[19] Mosquito argues that the rule of lenity, *i.e.*, the rule that ambiguous penal statutes should be construed against the government, applies here. But "this rule . . . comes into play only when, after employing normal methods of statutory construction, the legislature's intent cannot be ascertained or remains ambiguous." *DeNardo v. State*, 819 P.2d 903, 907 (Alaska App. 1991). Because AS 33.16.270's applicability is not ambiguous after standard principles of statutory construction are applied, the rule of lenity does not apply.